(86 South. 287)

No. 22208.

## BANTA v. McSPADDEN et al.

(June 12, 1920. Rehearing Denied Oct. 15, 1920.)

*(Syllabus by Editorial Staff.)*

1. Evidence ⬤⟳574—Contractor to do haulage on basis of cubic yard entitled to compensation in accordance with estimate of experts.

Where the evidence for plaintiff contractor to do haulage for a road contractor establishes that the layer of loose gravel actually put upon the road was thicker everywhere than the number of inches which defendant road contractor seeks to have adopted as the basis of figuring cubic yardage from known square yardage, plaintiff is entitled to recover on his contract to receive so much per cubic yard on the highway commissioner's estimate an amount which several estimates made by experts from the data and practically agreeing show it will be safe to allow plaintiff up to the amount claimed.

2. Payment ⬤⟳82(4)—Agreement to pay extra for haulage created natural obligation precluding reclamation of payments.

If an agreement by a contractor to construct a road to pay extra for the hauling of bricks was without consideration, it created a natural obligation nevertheless, precluding reclamation by the contractor under Civ. Code, arts. 1757, 2303, against plaintiff for what was paid pursuant to it.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; A. M. Barbe, Judge.

Action by Ray B. Banta against R. V. McSpadden and another. From judgment for plaintiff, all parties appeal. Affirmed.

Gayle & Porter, of Lake Charles, for plaintiff.

Cline & Bell, of Lake Charles, for defendants.

PROVOSTY, J. The two defendants, R. V. McSpadden and Percy A. Hipple, entered into a contract with the parish of Calcasieu for the construction of a gravel road. The gravel was to be furnished by the parish, but was to be hauled by defendants from where the railroad delivered it. For doing this hauling defendants entered into a separate contract with the plaintiff, Banta. Defendants were to be paid 30 cents "per square yard" of gravel road, payments to be made on presentation of vouchers "approved by the engineer" in charge, and the engineer in charge "shall determine the unit of quantities." Banta was to be paid so much "per cubic yard"; "the highway commissioners' estimate to be the basis of settlement."

On final settlement, Banta claimed that the computation of the cubic yardage should be based on estimates made by experts from various data. Defendants claimed, that inasmuch as the contract provided that the estimate of the highway commissioners should be the basis of settlement, the computation of the cubic yardage should be based on the estimates of square yardage furnished by the engineer.

The trouble in the way of the latter was that there were no highway commissioners, and that, even if the engineer in charge were to stand for the highway commissioners, he was not to furnish any estimate of cubic yardage, but only of square yardage.

These estimates of square yardage the defendants would adapt to cubic yardage by taking the square yards to have been 8 inches thick, whereby 4½ of them should go to the cubic yard. But nowhere in the contract of defendants with the parish was an estimate of square yards 8 inches thick to be furnished, nor an estimate of any kind of loose gravel; whereas the cubic yards, for which he was to be paid were to be of loose gravel. The square yardage of which the engineer was to furnish an estimate was to be of compacted gravel, and of the thickness of 6 inches. Of what thickness a layer of loose gravel must be in order to be 6 inches thick after compacted defendants would seek to establish dehors the contract, by parol evidence, and to

fix it at 8 inches, because this was the elevation indicated for spreading the loose gravel upon the road.

The trouble with that is that as a matter of fact the layer of loose gravel actually put upon the road was thicker than this everywhere, and in many places many inches thicker; so much so that the evidence establishes beyond serious dispute that the cubic yards hauled by plaintiff exceeded by many thousands the quantity that would result from a computation made on the basis contended for by defendants. That fact the defendants recognized when, after the work had been completed, they included in their claim against the parish for extra work an item of 40,555 square yards, which at 4½ square yards to the cubic yard would be 9,012 cubic yards. This claim, be it noted, was not based on surface area, for payment in full had been made for the surface area, but was based upon the extra thickness of the loose gravel. As explanatory of their having made this claim, defendants say it was because of plaintiff's claim. Even so, defendants would certainly not have made it if they had not known that a very much greater cubic yardage had gone into the work than they are now endeavoring to hold plaintiff down to.

Since the evidence conclusively establishes that plaintiff hauled, and has not been paid for, the yardage sued for, 7,000-odd, the case very evidently must turn upon what basis is adopted for the settlement.

[1] If the basis mentioned in the contract fitted the case at all, it of course would have to be adopted, regardless of what the consequences might be; for the contract would be the law of the case. But it does not fit the case, since a cubic yardage cannot be computed from a square yardage unless the thickness of the square yardage be first established, and the thickness of the square yardage in this case is not established by the contract. The contract does fix the thickness of the compacted square yardage, but it fixes it at 6 inches; and defendants are not asking that the computation be made on that basis, though the defendant McSpadden does testify that at the time the contract was made "there was nothing said as to whether it was loose or compacted" gravel.

While the defendant Hipple testified freely regarding the conversations between plaintiff and defendants at the time of entering into the contract, and as to what the understanding was, the defendants objected to Banta's being allowed to testify along the same lines.

Defendants testify (and it may be taken to be a fact) that at the time the contract was entered into it was commonly known that the contractor would be expected to lay the loose gravel to a thickness of 8 inches; but it was also commonly known that the parish was buying this loose gravel by the cubic yard figured on a basis of 2,800 pounds to the yard. Defendants would have it that they and plaintiff contracted with reference to the one knowledge; and plaintiff would have it that they contracted with reference to the other knowledge. Certain it is that the conduct and statements of the defendants in the course of the execution of the contract, or, in other words, the interpretation they put upon it, would go to show that they understood that their settlement with plaintiff would have to be made by weight.

Several estimates made by experts from different data and practically agreeing, show that the court would be safe in allowing the demand of plaintiff up to the amount of $3,563.12, now claimed.

Defendants have filed with their answer a statement of the account between them and plaintiff by which plaintiff appears to be indebted to them in the sum of $3,078.85, and they ask for judgment against plaintiff in that amount in reconvention.

The greater part of this demand is for reimbursement of an overpayment to plaintiff

for the hauling of the gravel. It would be due if the yardage were computed on the basis now contended for by defendants, but not if computed on the basis hereinabove adopted in the present opinion.

[2] Another part of this reconventional demand is for reimbursement of extra pay allowed plaintiff on the hauling of bricks. The payment was made in accordance with a change made in the contract for the hauling of the bricks, by which the contract price was increased. Defendants' contention is that this subsequent agreement was without consideration, a nudum pactum, and that therefore what was paid in pursuance of it may be reclaimed. If the agreement be conceded to have been without consideration, it at any rate created a natural obligation; and this precludes reclamation. C. C. arts. 2303 and 1757.

The other items of the demand are not sufficiently proved for judgment to be rendered thereon.

The judgment appealed from is therefore increased to $3,563.12, with legal interest thereon from judicial demand, and, as thus amended, is affirmed, with costs in both courts.

O'NIELL, J., is of the opinion that the judgment for $1,863.85 should be affirmed.