No. ——

First Circuit

---

McCAHILL v. WOOD

---

(June 26, 1926. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Surveyors and Surveys—Par. 4.**
When the old corners and lines made for a previous survey cannot be found, the lines must be re-established by a surveyor and Revised Statutes Article 3745 does not apply.

2. **Louisiana Digest — Prescription — Par. 13, 20, 22, 34, 42.**
When a party claims land by title and does not claim beyond his title, then his possession as owner is limited by his title and pleas of prescription of ten, twenty and thirty years are not applicable to that part erroneously possessed by him but not covered by the title.

Appeal from the Twenty-first Judicial District, Parish of Tangipahoa. Hon. Columbus Reid, Judge.

Action by William McCahill, et al., against Hayden Wood, et al.

There was judgment for plaintiffs and defendants appealed.

Judgment affirmed.

A. Sidney Burns, of Ponchatoula, attorney for plaintiffs, appellees.

Warren W. Comish, A. L. Ponder, of Amite, attorneys for defendants, appellants.

ELLIOTT, J. The plaintiffs brought suit to establish the original line separating headright 40 from headright 41, T. 7 S., R. 7 E., alleging that the line had become obliterated and was the boundary between the estates of the plaintiffs and defendants. Defendants contend that there is an established line between them and the plaintiffs and they claim ownership up to the line which they allege exists and plead the prescriptions of ten, twenty and thirty years in support of their ownership up to the existing line.

William McCahill and Winfield McCahill are the owners and possessors of land in

headright 40, while Hayden Wood and Frederick W. Kanel own the land adjoining them on the south in headright 41, T. 7 S., R. 7 E. The line separating headright 40 from headright 41, established by R. C. Brent, government surveyor in 1846, has been obliterated for many years, except here and there marks of the old line still exist; but these marks are mostly west of the holdings of the plaintiffs and defendants. The true southwest corner of headright 40 has not been known for a long time. The physical marks showing it were destroyed many years ago. The line between the southwest corner of headright 40 and the southeast corner of the headright is straight, but the location of the corners not being known caused the line between them to be a matter of dispute. C. M. Moore, C. E., was appointed by the court to locate the line. The defendants contest his location as being incorrect. His survey was approved and homologated by the lower court and the defendants appealed.

It appears from the testimony of Mr. Moore that he did not encounter any serious difficulty except in the work of locating the southwest corner of headright 40. In locating this corner of the headright he prolonged the west line of the headright beyond the length stated in the field notes of the government surveyor for 60 feet or about one chain. He explains that it was necessary to do so and thinks that the chain carriers for the government surveyor failed to call out a chain, because all the nearby, accessible, recognized and accepted government corners and points of departure require the length as well as the courses and to place the corner at the distance from the northwest corner which the field notes require would be in conflict with the courses, proved corners and points of departure in

the same headright as well as the adjoining headrights in the same township and range. The findings of the surveyor appear to be proved by the usual tests resorted to in such matters, and there is no evidence which indicates that his work is incorrect. A previous survey made by the parish surveyor supports in a general way the Moore survey. The line run by the parish surveyor and that run by Moore are not together, still they are near enough together to corroborate each other in showing that the western line of the headright must be projected further south than as stated in the field notes of the government survey. The Moore survey was subjected to tests explained by him while the survey made by the parish surveyor was not, so far as we know, subjected to any tests. The parish surveyor was not called as a witness, consequently it is likely that it was known that he would corroborate Mr. Moore in his findings. The Moore survey was made by order of the court and for the purpose of relocating the line in question. The provisions of the Revised Statutes, Sec. 3745, must be followed when the old corners and lines can be found; but when, as in this case, they are gone and must be re-established without the aid of the old markings, then the work depends on the fidelity and capacity of the surveyor.

The testimony of another surveyor was taken, but he did not make a re-survey of the locality, nor attempt to re-establish the southwest corner of headright 40 by the tests which Moore applied; he rather sought to show that the line separating headrights 40 and 41, as re-established by Moore, conflicted with the claims of defendants, up to a certain fence, etc. Mr. Moore testifies that to the best of his knowledge and ability he has re-located the line between the two headrights cor-

rectly and the trial judge was satisfied with his return, and we are likewise satisfied that his survey should be approved. We do not think that a new survey would be more satisfactory than the work done by Mr. Moore.

Defendants' titles call for land in headright 41. It is true, there is a call for a fence; and that fence was, in fact, on headright 40; but it was supposed to be in headright 41. The evidence shows that the parties all claim by titles and by virtue of titles, defendants' pleas of prescription notwithstanding. The defendants were not aware that the fences which they mention in their answers were in headright 40; they supposed that they were in headright 41 and nobody intended to claim beyond his title. In such a case the prescriptions of ten years, twenty years and thirty years pleaded by defendants have no application. In Williams vs. Bernstein, 51 La. Ann. 116, 25 South. 411, the Supreme Court said: "The mere fact that parties owning adjoining properties have cultivated land up to a certain line, or up to a certain fence, built by one or both or built by one and repaired by the other, does not per se evidence an adverse possession or an acquiescence in knowledge of or recognition of an adverse ownership or possession. Neighbors constantly run up fences within or beyond the boundary lines or join fences, doing so with the knowledge and understanding that such acts are merely temporary and done subsidiarily to and with reference to the right of both to ultimately ascertain and fix rights by an action of boundary or through a formal legal survey. Until this happens, such land is held in "occupancy" and not in "adverse possession"—certainly in the absence of a clear and direct claim advanced of adverse ownership and possession.

The cases, Banta vs. McSpadden, 147 La. 847, 86 South. 287; Administrators of Tulane Educational Fund vs. Stair, 148 La. 11, 86 South. 595; Houston Ice & Brewing Co. vs. Murray Oil Co., 149 La. 228, 88 South. 802, cited in plaintiffs' brief, have been examined and are applicable to the present case. And when a party claims land by title and does not claim beyond his title, then his possession as owner is limited by his title. See Laurent vs. Laurent, 146 La. 939, 84 South. 212, cited in plaintiff's' brief, and 1 N. S. 456; 3 N. S. 22; Gaude vs. Williams, 47 La. Ann. 1325, 17 South. 844; Vicksburg, S. & Pac. Ry. Co. vs. Le Rosen, 52 La. Ann. 192, 26 South. 854; Sibley vs. Pierson, 125 La. 478, 51 South. 502; Harang vs. Golden Ranch Land & Drainage Co., 143 La. 982, 79 South. 768; McHugh vs. Albert Hanson Lumber Co., 145 La. 421, 82 South. 392; Opdenwyer vs. Brown, 155 La. 617, 99 South. 482. The case, Opdenwyer vs. Brown, 155 La. 617, 99 South. 482, does not approve of a part of the opinion in the case, Vicksburg, S. & Pac. Ry. Co. vs. Le Rosen, 52 La. Ann. 192, 26 South. 854, but there is no objection to it when applied as above stated.

The judgment appealed from is correct. Judgment affirmed.

Defendants and appellants to pay the cost of the appeal. The costs of the lower court and the fees taxed to be paid all as fixed in the lower court.