## DE BAKEY v. PRATER.
### No. 1127.

Court of Appeal of Louisiana. First Circuit.
April 17, 1933.

Robert R. Stone, of Lake Charles, for appellant.

C. V. Pattison, of Lake Charles, for appellee.

LE BLANC, Judge.

This is a suit brought by the plaintiff to have the boundary line between his residence lot and the contiguous residence lot of the defendant in the city of Lake Charles judicially established.

Plaintiff alleges in his petition that he endeavored to have an amicable adjustment of the line made by extrajudicial survey, but that defendant refused to accept the same, that he then found it necessary to have a judicial survey made, and accordingly he asks the court to appoint a surveyor for that purpose.

The properties are situated in the block or square encompassed by North, Ford, Division, and Common streets; plaintiff's lot occupying the corner formed by the intersection of Ford and Division streets, and defendant's being the adjoining property on the south. The disputed line runs almost east and west. Plaintiff alleges that, according to the survey he has caused to be made, there was a shortage of 2.6 feet in the block, and that he offered to prorate the amount between the two properties by reducing the width of his lot from 76 to 75.13 feet and the depth of the defendant's from 150 to 148.27 feet. He alleges that the said survey shows that the fence and outbuildings as they now stand are not wholly on the defendant's land, as she is entitled to 150 feet by her deed, but avers rather that they are on his (plaintiff's) land by approximately 3 feet.

The defendant at first interposed a plea of ten and thirty years' prescription, which was by the lower court referred to the merits. Defendant then answered denying any encroachment of her property on the lot of the plaintiff, but again urged that the boundary line between the lots as presently fixed by a fence has been recognized for thirty-two years, and she therefore stands on the prescription of thirty years as at first pleaded by herself.

From a judgment maintaining the plea of thirty years' prescription and dismissing his suit, the plaintiff has appealed.

The district judge summarized the testimony of several witnesses as follows:

"Mr. Edward Bendixen built a house and moved to the De Bakey property in 1893. There was a fence, which he thinks was about where the present fence stands; but he could be in error to the extent of several feet.

"Dr. A. N. Pierce owned and lived on the Prater property from 1893 to 1900. He built a barn at the Northwest corner of the property and a fence from the Northeast corner of the building eastward to Ford Street. He says the barn is still in its original location, the fence attached to its Northeast corner, and he thinks it is in its original location throughout.

"Mr. Arthur Cropper lived on the De Bakey property from the latter part of 1894 until 1903. His testimony corresponds with that of Dr. Pierce.

"Mrs. Amanda Jansen lives in the Southwest quarter of the block in which the properties are located, and has lived there thirty two years. Barn and fence were both there when she came to the vicinity thirty two years ago. The fence has been repaired, but she feels certain that it has remained in its original location, the west end touching the northeast corner of the barn."

This testimony, coupled with other evidence that the defendant and those under whose titles she held, had occupied and used the property as far as the fence line during that time, was sufficient, in the opinion of the district judge, in the absence of further testimony, to support the plea of thirty years' prescription under Civil Code, art. 852. There is but little doubt in our minds of the correctness of the ruling of the trial judge on this point in view of the decision of the Supreme Court in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, in which the article of the Code referred to was considered and construed. We believe that that decision is now generally recognized as setting at rest the question of prescription where a tract of land has been possessed under visible bounds for thirty years.

Whatever doubt there may be in this case as to the defendant's right to invoke the prescription provided for under that article of the Code arises from evidence which tended to show that there might have been an interruption of the prescription. The evidence on this point is found in the testimony of Mr. Charles Chavanne, who is the husband of a former owner of the De Bakey property, and which is to the effect that his wife purchased the property in 1903 and that they resided on it until 1920; that in 1912 he had the lot surveyed, and this survey showed the dividing fence to be about 3 feet out of the way, and that he so informed the owner of the property now owned by the defendant, Mrs. Prater. He says that he did not want to go to the expense of removing his fence and barn at the time, and that the owner of the other property told him it would be all right for him to remove it at any time. He states that he never said a word about it except at one time. Apparently nothing was ever done, and as a matter of fact the line as then visibly existing remained the same as it always had and so remains to-day, and the respective owners continued possessing to the same extent.

In considering this, the most important issue in the case, the learned district judge, in his written reasons for judgment has the following to say:

"The question is whether the fact thus testified to interrupts the prescription of thirty years. C. C. art. 852, says: 'If it be proved that the person * * * are those under whom he holds, have enjoyed in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it; * * * for he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.'

"As laid down in the Opdenwyer Case, * * * this article differs in important particulars from articles 3493 and 3494, which regulate the thirty years' prescription acquirendi. It is seen in these cases that the law favors the prescription of visible boundaries between estates far more than it favors the acquirement of title by prescription. 'It is our firm conviction' says the Supreme Court, 'that the public interest requires that boundaries established for more than thirty years should not be disturbed, and we think the law so provides.' A public policy is thus declared in behalf of the public interest, a policy which favors the perpetuation of visible boundaries in existence for thirty years or more,- and therefore looks with some disfavor upon any attack against them.

"It is a distinguishing feature of the boundary prescription of thirty years that adjacent proprietors prescribe beyond their title and beyond that of their authors, whose possession they may 'tack on.' This constitutes a bad-faith possession, actual as well as legal. The possession of each is exercised in the actual presence of the other, and therefore by his consent, not only constructive, as in other possessions affected by prescription, but actual and continuous. This consent may be tacit or expressed; and it is difficult to distinguish between the effects of the two. The proprietor who possesses beyond his title, extending his dominion to a visible boundary, may not only be charged with knowledge, but may actually know, that he possesses what he does not own. Whether his neighbor is equally. informed does not seem material, so long as he permits the unwarranted possession. To say that| one proprietor, possessing beyond his title, and thus encroaching upon his neighbor, is holding under the true owner as a sort of tenant at will, and therefore cannot prescribe because the true owner knows of the encroachment, and does not protest, would be to destroy the entire theory and purpose of the codal article; for it is based upon possession in the presence of the parties and under their presumed acquiescence.

"It is seen, therefore, that, in order for a visible boundary to become fixed by the prescription of thirty years, the proprietors need not believe it to represent the true boundary. They may have knowledge to the contrary. It is only necessary that their respective possessions, namely, their public use and dominion, be separated by the visible, physical marking, beyond which neither encroaches. The intention to use the boundary as the limit of their respective dominions for more than thirty years precludes both from asserting thereafter that they did not intend to adopt it as the true dividing line. That is the purpose of the prescriptive article. Mental reservations, even publicly expressed, are much less substantial title foundation than is actual, notorious, physical possession for a long period of years; and the law chooses the firmer foundation.

"The prescription of ten years is, of course, founded upon a different theory. It begins only when the line has been established judicially or extrajudicially by a sworn surveyor, in accordance with C. C. art. 833. Article 853 grants the right to rectify such a line within ten years, except where judicial fixing has become res judicata. It is this prescription about which the court speaks in Williams v. Bernstein, 51 La. Ann. 115 [25 So. 411], where it is said that mere use and occupancy of the land up to the fence built by both parties does not evidence adverse possession, since this may be intended as temporary and with reference to the right of both to fix ultimately the correct line. This expression applies to the prescription which begins only with a definite fixing of the line, namely, to the shorter prescriptive period of ten years. Possession for the longer period of thirty years, in good or bad faith, limited by a visible partition between the two dominions, does not support the same presumption that the visible partition was intended as temporary. On the contrary, it supports the presumption that the proprietors by such long-continued use intended that it should be permanent.

"It is shown in this case that possession limited by the fence began more than thirty years before the filing of the suit. Prescription by which ownership may be acquired is interrupted only by two causes—deprivation of possession for more than a year, and institution of suit involving the ownership or the possession. C. C. 3516–3518.

"There is found no provision in this class of prescription by which it may be interrupted by mere acknowledgement, as in prescriptions which released the debtor."

With these principles governing the prescription claimed, the trial judge held that the evidence disclosed by the testimony of Mr. Chavanne, which after all constituted mere knowledge on his part and the imparting of that knowledge to the adjacent proprietor with no contention being made by the

latter as to the true line between the properties, was not sufficient to constitute an interruption, and he so decreed.

We do not know of anything that we could add that would make his reasons more convincing, and we therefore adopt them as our own.

The judgment which sustained the plea of thirty years prescription and dismissed the plaintiff's suit at his costs was correct, and it is accordingly affirmed.

ELLIOTT, Judge (dissenting).

Owners of contiguous estates have a right, as a matter of law, Civil Code, art. 823 et seq., to have their boundary limits fixed and recognized when none exists. In this case such a necessity exists, but the judgment appealed from rejects plaintiff's demand without recognizing and fixing any boundary limits between the parties, leaving the situation as it existed before the suit was filed, which was in itself an error.

The case, McCahill v. Wood, 4 La. App. 621, cited by the plaintiff, is not applicable to the present case. The opinion in the McCahill Case states that the defendants urged the prescriptions of ten, twenty, and thirty years in support of their ownership up to an existing line, but in a later part of the opinion it is said that nobody intended to claim beyond his title. The opinion shows that the parties owned land in adjoining headrights and the dispute between them was as to the true location of the government lines separating headright No. 40 from headright 41. The parties whose title called for land in headright 40 did not claim any in headright 41, and those whose title called for land in headright 41 did not claim any in headright 40.

That is not the present situation.

The case, Morris v. Prutsman, 7 La. App. 404, is also different from the present case. That case was based on a boundary fixed by consent more than ten years previous to the suit, and both sides claimed under titles and according thereto.

In the case now in hand, the defendant does not produce any title. Therefore she has no title limits that the court can recognize contradictorily with the title limits advanced by the plaintiff.

The plaintiff judicially recognizes the defendant as his contiguous owner of the south, and alleges in his petition, article 7, that "* * * she is only entitled to 150 feet depth by the recitals of her deed. * * *"

But the defendant answered plaintiff's averment No. 7 as follows: "That she denies the allegations of Art. 7 of said petition for lack of sufficient information to justify a belief in the truth of same except the allegation as to what her deed shows, which allegation she denies and avers that her deed is the best evidence of its said contents."

Defendant thus by her answer denies the depth which her lot is alleged by plaintiff to have, averring that her deed is the best evidence of its said contents, presumably meaning in the matter of depth.

On the trial of the case, she did not offer her title in evidence to the end that its limits in the matter of depth could be therefrom ascertained. Neither did she offer in evidence the title of any preceding owner of her lot to the end that its limits might be therefrom ascertained and she might be held to have deraigned a right to the limits from former owners.

The only evidence introduced on the trial bearing on the depth of her lot is the parol evidence of the surveyors called as witnesses in the case given in explaining their plats and procès verbals made in connection with their surveys at the instance of the parties; one of the surveys being made by order of the court.

Mr. Mandell, surveyor, speaking in his procès verbal, says that the De Bakey property is described as having a frontage of 76 feet on Ford street and the Prater property as having 150 feet front on the same street; that he found a shortage of 2.6 feet in the block; that he found marks of survey made by Mr. Shuttz for Mrs. Prater 2.75 feet from the points arrived at by his survey; that he was told by Mr. Prater that the Shuttz survey commenced at Reid and Ford streets, or two blocks north of the property in question, etc.

I take the position that the possession which a party must hold under Civil Code, art. 852, in order to be able to avail himself of the prescription of thirty years must be under a title; that, without a title advanced and put in evidence in support of the limits claimed, the prescription provided for by that article is not available because there is no point beyond that mentioned in his title, a prerequisite and necessary foundation for the prescription provided for.

The parol evidence of the surveyors in stating the depth of the Prater lot is not the equivalent of title limits. Such testimony is not the title required by article 852.

The title called for in article 852 is the same title called for by article 843 in saying that "In matters of limits, reference must be had to ancient titles, unless it be proved that the bounds have been since changed, or that the land has been increased or diminished by changes caused by successions, by the will of the owner or by other events," and is the same called for by article 845, which provides that the limits must be fixed according to the respective titles of the parties. In the absence of title on both sides, possession governs.

In the matter of limits that have not been fixed judicially, extrajudicially by consent,

or acquired by prescription, the theory of the law is that, when a party happens to have possession beyond the limits proper to his title, it is considered to result from error and mistake; that the intent is to possess according to the title under which the owner holds. Clapham v. Clayton, 118 La. 419, page 422, 43 So. 36.

Other cases read and analyzed are to the same effect. Millikin v. Minnis, 12 La. 539; Sprigg v. Hooper, 9 Rob. 248; Bach v. Slidell, 2 La. Ann. 626; Andrews v. Knox, 10 La. Ann. 604; Keller v. Shelmire, 42 A. 323, 324, 7 So. 587; Williams v. Bernstein, 51 La. Ann. 115, 25 So. 411; City of Shreveport v. Simon, 132 La. 69, 60 So. 795.

It is well established that in actions of boundary titles are offered in evidence, not for the purpose of establishing ownership, but for the purpose of establishing the limits of the title under which the parties claim. It therefore follows that plaintiff, having a title and having offered it in evidence praying that his limits be fixed according thereto, and the defendant, supposing her to have a title, did not offer it in evidence so that her limits could be fixed according thereto, there is, in fact, no conflict before the court in the matter of title limits. Defendant must be regarded as not depending on a title and limits according thereto but on the prescription of thirty years without title under Civil Code, art. 3499 et seq.

The case Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 484, cited in the opinion of the lower court and in the opinion of this court, is not applicable to the present case. I think it a mistake, to hold this case as governed thereby when the situation is not the same. The Opdenwyer Case was a boundary suit, but the opinion shows that both Opdenwyer and Brown claimed boundary limits as resulting from their respective titles. Therefore the articles 843, 845, and 852 of the Civil Code were the law of the case. The court sustained the visible boundary limits claimed ·by Opdenwyer on the ground that he and those under whom he deraigned had possessed as owners under titles up to the visible boundary for upwards of thirty years.

That part of the opinion which states the difference between the requirements of article 852 and that of 3499 et seq. on the subject of prescription says: "It will be observed that in such a case the holder of the junior title may retain any quantity of land 'beyond his title' which he or those under whom he holds may have possessed for 30 years. Note well that the title of the junior title holder need not call for this surplus of land; for the words of the law are that he shall be entitled to retain the land 'beyond his title.' And, as we have shown, this is absolutely not the case under the prescription acquirendi causa."

The defendant is not before the court in the position of Opdenwyer, nor within the reasoning of the Supreme Court, nor within the contemplation of the articles of the Civil Code heretofore mentioned on the subject of boundary limits.

She is not in position to invoke the prescription of ten years provided for by Civil Code, art. 853, because that article also has in mind boundary limits fixed by a surveyor in accordance with the titles of the parties. She cannot claim the fence and outbuilding as her boundary limit by the prescription acquirendi causa under the Civil Code, art. 3499 et seq., because she can only assert her own possession and she has only possessed the lot which she claims about ten years. She cannot tack to her possession that of the preceding owners of her lot so as to avail herself of the prescription acquirendi causa provided for by that article.

The Opdenwyer Case practically overrules Vicksburg, S. & P. R. Co. v. Le Rosen, 52 La. Ann. 192, 26 So. 854, Sibley v. Pierson, 125 La. 478, 51 So. 502, and Harang v. Golden Ranch, etc., Co., 143 La. 982, 79 So. 768, in so far as concerns the prescription provided for by article 852, but does not overrule those decisions to the extent that it is therein held that a possessor claiming thirty years' prescription under Civil Code, art. 3499 et seq., cannot tack the possession of previous owners to his own, but can only claim under his possession and for the time he has held as owner.

Not only is the above true, but defendant cannot claim that the fence and outbuilding is her boundary limits because under both articles 852 and 3499 et seq. possession must be uninterrupted and possession up to this fence has not been uninterrupted for thirty years previous to this suit.

A witness, Charles E. Chavenne, testified that in 1903 his wife owned the lot which is now owned by the plaintiff and resided on it until 1920, and that a man named Spence owned and resided on the property now owned by the defendant; that, while the property now owned by defendant was owned and resided on by the man named Spence, his (Chavenne's) wife, during the years 1912 or 1913, caused the boundary line between their respective properties to be surveyed, with the result that the same fence and outbuilding which the defendant pleads is now the dividing line was shown by the survey then made to be about three feet over on the north or Chavenne's side of the line; that Mr. Spence told him it would be all right to move the fence back to the line. Mr. Chavenne says that he did not care to go to the expense of doing it at that time, but Mr. Spence told him that any time he wanted to move the fence to go ahead, it would be all right with him. The fence and outbuilding was not moved, and is now where it was then.

The testimony of Mr. Chavenne is not con-

tradicted, and Mr. Spence, then owner and possessor, having during 1912 or 1913 consented to adjoining limits, not according to the fence and outbuilding but in accordance with the survey made at the instance of Mrs. Chavenne, his consent and recognition operated as an interruption of the possession of Mr. Spence as owner up to the fence and outbuilding within the meaning of articles 852 and 3499 et seq.

The marks of the survey made at the instance of Mrs. Chavenne in 1912 or 1913 were no doubt the same noted by Mr. Mandell in his procès verbal as still showing on the ground between the two lots.

There is, moreover, evidence to the effect that defendant, previous to filing her answer in this suit, did not claim the fence and outbuilding as the boundary line between her and the plaintiff.

A negro named Dan Reed testified that he was employed by Mr. De Bakey to plant a hedge along the fence next to the defendant, and that, while so engaged, Mrs. Prater stopped him. The witness relates what she said to him as follows: "She told me I am not to plant on there because that was on her land"—that afterwards Mr. De Bakey came and the defendant, Mrs. Prater, showed him (Reed) in the presence of Mr. De Bakey where her line ran, and it was about 4 feet beyond the fence toward Mr. De Bakey's house.

The plaintiff testifies that he sent Dan Reed to plant a hedge, and the defendant, Mrs. Prater, came out and claimed 12 feet inside the fence on his property. He says that he went there in the afternoon and took his man back, and Mrs. Prater came there and told him that she did not mind for him to plant the hedge there, but that the fence was not the line; that some day she might sell the property and make him take the hedge off. "'Well, Mrs. Prater,' I said, 'ain't that fence the line?' She said, 'No. When I bought the property they told me I owned 12 feet inside the fence on that property.' I said, 'Mrs. Prater, I didn't survey the lot. If that is the case, you own 12 feet, we will see and we will survey the lot.'" The testimony of the plaintiff and of Dan Reed is not contradicted. The evidence does not show when this occurrence took place, but it seems probable that it was only a short time previous to the suit.

J. W. Champion testified that he was considering the purchase of plaintiff's property, and with that end in view visited the place about July 3 or 4, 1931. If this date is correct, it was after defendant's answer was filed. Mr. Champion testified that, while engaged in inspecting plaintiff's property, Mr. Prater and himself had a conversation during which Mr. Prater stated to him that the fence was not on the line but was on his property; that the line between the properties was nearer to the De Bakey house.

Mr. Prater admits that he had a conversation with Mr. Champion, but denies that he made the statement imputed to him. He says that Mr. Champion asked him if the fence was the line, and that he told him, "I suppose so." "I told him I didn't know just where the line was." Mr. Prater says that his wife was present at the time, but we infer from what he says that she may not have heard the conversation between him and Mr. Champion.

It is clear that a judgment should be rendered putting an end to this dispute, but the plaintiff testified on the trial that he was willing to accept that portion of the shortage in the block proposed in the Mandell procès verbal, and had so advised Mr. Prater. This apportionment will reduce by about 9 inches the frontage which plaintiff's title calls for, and will reduce the defendant's depth or frontage, as it may be, adjoining plaintiff, about 18 inches.

Mr. Burton, surveyor, formerly city surveyor, testifies that the original starting point from which these lots were located as sold by the first owner has been lost; that the streets which bounded the lots were not straight at the time; that he straightened the streets, thereby causing in some instances a shortage in the block. Plaintiff's title calls for certain limits, but, in view of the testimony of Burton, surveyor, I think the limits between plaintiff and defendant should be definitely fixed as proposed in the Mandell survey.

For these reasons I dissent from the opinion and decree of the majority of the court herein.