No. 12,993.

E. B. WILLIAMS VS. SAMUEL BERNSTEIN. IN RE SAMUEL BERNSTEIN, APPLYING FOR CERTIORARI OR WRIT OF REVIEW TO THE COURT OF APPEAL, FIRST CIRCUIT, STATE OF LOUISIANA.

SYLLABUS.

1. An action of boundary, pure and simple, is not open to a plea of prescription. (Civil Code, Article 825.) The action may be repelled by showing that the boundary line between the two properties has been settled by judicial decree or by a survey made by a surveyor in conformity with the requirements of the Civil Code. A line, however, even when established between the parties by such a survey yields to a demand for the rectification of the same under an allegation of error unless the party resisting the rectification should allege and show an adverse possession of ten years under the erroneous line.

2. The mere fact that parties owning adjoining properties have cultivated land up to a certain line or up to a certain fence built either by one or both, or built by one and repaired by the other does not *per se* evidence an adverse possession or an acquiescence in, knowledge of or recognition of an adverse ownership or adverse possession.    Neighbors constantly run up fences within or beyond the boundary lines or join fences, doing so with the knowledge and understanding that such acts are merely temporary and done subsidiarily to and with reference to the right of both to ultimately ascertain and fix rights by an action of boundary, or through a formal, legal survey.    Until this happens such land is held in "occupancy," and not in "adverse possession"—certainly in the absence of a clear and direct claim advanced of adverse ownership and possession.

*Jack & Fleming* for Petitioner, Defendant and Appellant.

*Pierson & Porter* for Williams, Plaintiff and Appellee.

Submitted November 28, 1898.
Opinion handed down January 23, 1899.

### STATEMENT OF FACTS.

The opinion of the court was delivered by

NICHOLLS, C. J.    The plaintiff, Williams, alleging that he and the defendant were owners of contiguous pieces of property; that the limits and boundaries between them had never been fixed and determined judicially, although one or more *ex parte* surveys had been made of the line separating the tracts, prayed that defendant be cited; that the court appoint a skilled, sworn surveyor to inspect the contiguous tracts and to establish and mark the boundaries, and to make *proces verbal* of his work to the court, and for judgment, establishing and fixing the true boundary lines and limits between the tracts.

Defendant answered, pleading the general issue.    He admitted that plaintiff had purchased a tract of land adjoining his own on the 8th of October, 1872, but averred that the same had been both sold and purchased with special reference to what is called in the answer the

"Ragan Survey" boundary line, forming the division line between the two estates which had ever since been recognized by all parties in interest.

He averred that it would not be possible for the court to adopt the survey made by one Henry under the orders of court and make the boundary line conform to the same, as by so doing it would give to the plaintiff three hundred and six acres in his tract, or three acres more .than his title called for, which was for three hundred and three acres.

He insisted that this survey should be rejected, and the boundary fixed according to a certain "old Hedge Row Line" (what that line is does not clearly appear), but should another line be adopted, that it should be at a point other than that claimed by the plaintiff.

Defendant ultimately pleaded in his favor, the prescription of ten years, claiming that plaintiff's action, under the pleadings and facts of the case, was for a "rectification" of boundary, and is prescribed by ten years on account of adverse possession for that time.

The District Court rendered judgment in favor of the defendant, decreeing the division line between the two tracts to be that fixed by the survey made by Ragan on the 10th day of August, 1872.

Plaintiff appealed to the Court of Appeals of the First Circuit, and that court reversed the judgment appealed from, and rendered judgment in favor of the plaintiff, fixing and establishing the boundary line between the tracts according to the government subdivisions as indicated in the calls of the deed, without reference to any survey previously made by Ragan, and remanded the cause to the lower court with instructions to order the surveyor to run plaintiff's line on the east according to government surveys and the calls of his deed, and to place permanent posts on said line which should constitute the true boundary between the two estates."

Bernstein, the defendant in the case, then made the present application to this court, praying that under the provisions of Article 101 of the Constitution that the whole record be sent up for its consideration, and the whole matter in controversy be passed upon by it. He annexes to his application the briefs filed by him in the Court of Appeals and a copy of the decree of the latter court, which would show he declares the issues involved in the case, as well as the questions of law and errors alleged to exist in the court's decree.

He says that he specially complains that the judgment of the Dis-

trict Court is in conflict with the established jurisprudence of the State which he asserts to be as follows:

"Where a boundary between contiguous estates has been fixed by a surveyor, or established and acquiesced in by the owners for over ten years, the right to have it rectified lapses by express provisions of the Code, and where the contiguous owners hold property under titles from a common author, and one of them has possessed the disputed part for over ten years under the conditions prescribed in the Code from Article 3478 to 3498, his title becomes, by legal effect, as absolute and indefeasible as to that part as if his deed had included it."

The Court of Appeals in deciding the case uses the following language:

The material facts necessary to a proper understanding of this case may be briefly stated as follows:

"The parties both acquired the contiguous estates from a common author who owned the whole property. The plaintiff's title calls for specific lands described by government subdivisions as the East half of the West half, and West half of the East half of Section 19, Township 3, Range 5, containing 303 acres. The sale to plaintiff was made October 8th, 1872, and according to the admission in the record, was recorded a few days afterwards. In this deed there are no limitations and restrictions.

In the defendant's deed the land is described as follows: 'A certain tract of land situated in the parish of Natchitoches, in Sections 19 and 30, in Township 8, Range 5, West, containing 99.50 acres more or less according to a map made by A. V. Ragan, parish surveyor of the parish of Grant, hereto annexed, and made a part hereof, bounded north by lands of Isaac McMills, on the south by Clear Bayou, on the east by Bayou de Glaze and on the west by land of J. R. Williams."

The court survey indicates that the original section corner can be easily located, and it follows that if the case hinged exclusively on the title deed the case would be with the plaintiff as there would be no difficulty under the Code in fixing the line. The plaintiff having the older title calling for specific lands by government subdivisions the lines would have to be run accordingly. Articles 847 and 849 (C. C.) would conclusively require that his title should prevail, and that a line should be so run as to include the whole area embraced within the calls of his deed.

It is clear that the plaintiff's act of sale is not one per aversionem.

Marigny vs. Nivet *et al,* 2nd La. 498; Johnson vs. Quarles, 3rd La. 90; Phelps vs. Wilson, 16th La. 185. The only complication that appears in the matter is the fact that the common author was the owner of the remaining portion of Section 19 on the East and appears to have set apart a portion thereof to the defendant, and title to the same was afterwards made to him according to a survey made by agreement of the defendant and his vendor. Some time prior to the sale to plaintiff a survey was made by Ragan, in which survey the line was run on the Western boundary, not according to the government subdivisions, but an arbitrary line was run so as to include one hundred acres. This arbitrary line the common author had the legal right to make.

But the pivotal point in the case on which the whole controversy is made to turn, in our opinion, is whether the plaintiff bought with reference to this arbitrary line, and if not, does his acquiescence in this line of subdivision for more than ten years preclude his right of action to fix a new boundary line between the two estates more in conformity with his deeds?

The sole object of this action is to fix visible marks of separation of estates. Its character and object are then described by the Supreme Court in Andrews vs. Knox, 10th Ann. 605. "When two tracts of land contiguous to each other, have never been separated, or had their boundaries determined, or if the boundaries determined are no longer to be seen, each of the proprietors has the right to compel the other to fix the limits of their respective estates.

So the question to be determined is, have these two contiguous tracts of land been separated judicially or otherwise, and the boundary line between the two determined according to law.'

It might be important in this connection to state that what is known as the Ragan line is indicated on a map made by Ragan annexed to the defendant's deed, and recorded in 1875.

It is established that the fence which divides the two properties is on the Ragan line and that both proprietors have looked to this as the dividing line since its construction in 1875.

The fence was originally constructed on the Ragan line by the defendant, and has occasionally been rebuilt and repaired by the plaintiffs, but there is no evidence in the record that there was any agreement between the two proprietors that the fence of the Ragan line should be taken as the boundary line between said properties.

The *procès verbal* of the court survey indicates that there was also

a survey made by Mr. Percy, but there is an absence of any evidence in the record tending to show when this survey was made, or at whose instance.

The Ragan survey does not purport to be run according to government subdivision in Section 19. The line is in harmony with the government subdivisions in Section 30, but when Section 19 is reached going north an offset of 1.40 chains is made west which we presume was done by the surveyor so as to include in the Bernstein tract 100 acres as near as practicable. The line marked by the government survey follows the government subdivision called for by the plaintiff's deed.

So to give the plaintiff the land according to the calls of his deed we would have to encroach on the lands of the defendant 5.18 acres— the land in dispute. The Ragan line, in Section 12, is an artificial or arbitrary one as clearly demonstrated by the map made by him.

Bernstein accepted a deed in which the western boundary of his land in Section 19 is referred to as Williams land, and under all the authorities when he accepted a deed bounding him by another's land the land referred to in the deed became a muniment and controlled distances.

The contention of the plaintiff is that he purchased the land included in the calls of his deed, without reference to any particular survey and without mention being made in the act of sale of any circumstances which would qualify or restrict his rights to demand the whole quantity embraced within the calls of his deed; the defendant contending that the plaintiff took the land with full knowledge of the Ragan Survey made by the common author, and has recognized the same as the boundary line between said estates ever since 1873. As we have said, there are no restrictions or limitations in plaintiff's deed or reference to any survey made by Ragan, and it remains to consider whether anything has been done by the plaintiff looking to the Ragan line as the true boundary, and by means of which he has lost the right to recover the whole of the property included or embraced within the calls of his deed. In other words, whether there has been such a fixing or establishment of the boundary line so as to operate as a basis of the prescription of ten years as contemplated by Article 853 of the Civil Code.

If his right of action is not barred by the prescription of ten years according to our construction of the law, he is legally the owner of the

whole of the land embraced within the calls of his deed and the boundary line should be adjusted accordingly.

The main question in our opinion that underlies a proper solution of this case is whether the erection of a division fence by two adjoining proprietors, and each looking to this as the division line for more than ten years, constitutes the establishment of the true boundary in the absence of any agreement or otherwise, that the site of the fence should constitute the true boundary between the two proprties, and if this state of facts should constitute the fixing of a boundary within the contemplation of Articles 833 and 853 of the Civil Code, and would any action in rectification of the boundary thus made, be barred by the prescription of ten years? We must confess that under the facts and circumstances viewed in the light of judicial expression of our Supreme Court, the question is not free from difficulty.

The equities of the case seem to preponderate in favor of the defendant, but the articles of the Code on the subject are positive and direct. If the boundaries had been fixed according to a common title or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified unless the part of the land on which the error was committed be acquired by an adverse possession of ten years if the parties are present, and twenty years, if absent. C.C. 853. Whether the limits be fixed judicially or extra-judicially it must be done by a sworn surveyor of the State, who shall be bound to make a *proces verbal* of his work in the presence of two witnesses called for the purpose, who shall sign the *proces verbal* with him, or mention shall be made of the causes which prevented them from signing. C. C. 833."

The court then takes up and discusses the cases of Broussard vs. Duhamel, 3rd N. S. 11; Babineau vs. Cormier, 1 N. S. 457; Bourguignon vs. Boudousquie, 6th N. S. 700; Frederick vs. Brulard, 6th Ann. 382; Lemoin vs. Moncla, 9th Ann. 515; Williamson vs. Himel, XI La. 183; Gray vs. Couvillon, 12th Ann. 730; Zeringue vs. Harang's Administrator, 17th La. 350 and City vs. Shakspeare, 39th Ann. 1033, closing with an extract from the latter case in which the court says: "Article 853 is found in the Code under the title of 'Fixing the limits and of surveying the lands,' and it must be construed with reference to other articles of the Code under the same title which treat of the same subject matter. The privotal article under that title, Article 833, provides, that whether the limits be fixed judicially or

extra-judicially, it must be done by a sworn surveyor of the State who shall be bound to make a *proces verbal* of his work in the presence of two witnesses called for the purpose, who shall sign the *proces verbal* with him.

"There is no pretence here that such fixing of limits preceded the location of the partition fence erected by the commissary of the municipality at the time which he describes as being sometime before the consolidation in 1852."

The Court of Appeal proceeds to say: "The plain purport of these adjudications and the only conclusion to be drawn therefrom is that unless the boundary lines between the two contiguous estates have been fixed in conformity with Article 853 of the Civil Code that an action in rectification is only prescribable by thirty years. Even if the lines be fixed extra judicially by a sworn survey, or 'after due notice to the parties and no opposition being made, the parties do not thereby lose their right of resorting to a court of justice to rectify the operations if they think it for their interest.' C. C. 839. Lacour vs. Watson, 12th Ann. 214. The right of action however to rectify a mistake of this character is barred by the prescription of ten years.

The theory and policy of the law is that the survey by a sworn surveyor is an official act and the *proces verbal* is written evidence of the proper location of land in accordance with the title papers of the parties, and is sufficient to translate the ownership of property and serve as the basis of prescription.

Applying the principles of law thus announced to the uncontested facts of the case we are led to the conclusion that the plaintiff's right of action to establish a permanent boundary line between his property, and that of defendant, is not barred by the prescription pleaded.

Recurring again to the title deeds of the parties, the fact remains that the calls in plaintiff's deed are by government subdivisions, and according to which he is entitled to all the lands embraced within the east half of the west half, and the west half of the east half of Section 19, and that the line should be run accordingly.

A sale by government subdivisions controls acreage stipulated in the deed. Such sales of land have certain limits which are mathematically established and generally known—from this it becames a certain and limited body. (Phelps vs. Wilson, 16 La. 185.) In a sale of this character, a supplement of the price in the event of an

overplus of measure cannot be claimed by the seller, neither can the purchaser claim a diminution of price on account of deficiency in the measure unless the real measure falls short by one-twentieth, regard being had to the totality of the object sold.   C. C. 2494; Phelps vs. Wilson, 16th La. 185.

The defendant's tract is described as being bounded on the west by land of plaintiff.   The Civil Code, Art. 844, declares that 'when an owner has alienated one of two estates which belonged to him, and the ownership of any part of it is contested, the lands assigned to it by the vendor at the time of the sale must be consulted.

"The limits anciently subsisting between two estates must not be regarded because the designation which the vendor makes of the metes and bounds form new limits between the two estates, or between the parts of them which he has sold.'

Now under this article if we consult the limits assigned by the vendor at the time of the sale it is clear that we should follow the calls of the plaintiff's deed and not consider "limits anciently subsisting between the two estates,' because the designation, which the vendor makes of the metes and bounds, form new limits between the two estates, or between the parts of them which he has sold.   Lacour vs. Watson, 12th Ann. 214; Alexander vs. Bourdier & Bellesein, 43rd. Ann. 324.

There is nothing to show that an adverse possession has produced any difference in plaintiff's situation so as to defeat his right by prescription.   While it was perfectly competent for the common author to establish an arbitrary boundary between two tracts, yet when she sold specific tracts without any mention being made in the act of sale of the boundary thus established, it is perfectly clear that the purchaser is not bound by any such *ex parte* survey made by the defendant, or by one made by him, and the common author. Sprigg vs. Hooper, 9th Rob. 248.

If there be a written declaration fixing and establishing the line contended for by the defendant by the common author by which it was declared that the Ragan line should form the boundary between the two properties, it would not have been binding on the plaintiff unless the same has been duly recorded, or otherwise brought home to the plaintiff by recitals in the deed to that effect.   Kittridge vs. Landry, 2nd Rob. 72.

There are numerous other issues raised and discussed, both by plaintiff's and defendant's counsel, which we have not considered, as under our view of the case a solution of the controversy hinges entirely on the plea of prescription tendered by the defendant.

Entertaining the views that we have announced, it follows that the case is with the plaintiff, and that the judgment appealed from must be reversed."

## Opinion.

I have examined the case carefully to see whether the relator has made such a showing as would justify this court in issuing a writ of certiorari to the Court of Appeals. I think he has not, but that the judgment complained of is correct. The character impressed upon the action by plaintiff's pleadings is not an action for a rectification of boundaries as relator asserts, but an action of boundary pure and simple. An action of that character is not open to a plea of prescription. (C. C. 825.) The action may be repelled by showing that the boundary line between the two properties had been settled by judicial decree or by a survey made by a surveyor in conformity to the requirements of the Civil Code.

A line, however, even when established between the parties by such a survey yields to a demand under an allegation of error for the rectification of the line unless the party resisting the rectification should allege and show an adverse possession of ten years under the erroneous line. The mere fact that parties owning adjoining property have cultivated lands up to a certain line or up to a certain fence built either by one or by both, or built by one and repaired by the other, does not *per se* evidence an adverse possession up to the line or fence, or an acquiescence in or recognition of an adverse ownership. Neighbors constantly run up fences within or beyond the boundary lines and join their fences, doing so with the knowledge and understanding that such acts are merely temporary and done subsidiarily to and with reference to the right of both to ultimately ascertain and fix rights by an action of boundary or through a formal legal survey. Until this happens the lands held by each are in the occupancy and not in the adverse possession of either, certainly so in the absence of a clear and direct claim advanced of adverse ownership and possession.

In the absence of such a claim the other party is justified in assuming that matters as to boundary are resting in abeyance subject to future adjustment through an action of boundary.

There can be no question as to the correctness of the judgment in dealing with the original rights of the parties as derived by each through their vendor. Both claim under a common author. Plaintiff was the first purchaser under a title calling for the government lines as the boundary lines. Defendant purchased subsequently a certain number of acres of land as per a certain survey referred to, this act declaring, however, that the property purchased was bounded by the plaintiff's land.

There can be no doubt as to the right of a person owning adjoining properties acquired by him under separate and distinct titles, to ignore the original division lines and to dispose of his property according to new and arbitrary lines, but if he has sold to one by the original lines he cannot thereafter sell to another by a new and arbitrary line to the prejudice of the rights and boundaries conveyed to his first vendor. His act in so doing would be null and void as an attempted sale of another person's property.

We understand relator to say that whether or not his vendor had the legal right to sell to him as she did, she did in point of fact sell, and his subsequent possession was not over and beyond the title as made to him which would require a prescription of thirty years to acquire ownership, but in strict conformity with and to the full limits of the title given him which would require only a prescription of ten years to acquire the ownership of anything which his vendor was not legally entitled to convey to him.

We think that holding as he did by purchase, property adjoining to that already conveyed to the plaintiff by a common author, he can not claim to have held any portion of the property actually owned by the plaintiff by adverse possession in the absence of a clear and distinct advanced claim of adverse ownership of that portion. Plaintiff would have the right to assume that defendant's possession (if such it could be termed) was by sufferance, precarious and subsidiary to the adjustment of the exact legal rights of the parties, to be ultimately ascertained and fixed by an action of boundary.

I think relator's application for a writ of *certiorari* should be refused. The application is hereby refused.

(Signed)                                    FRANCIS T. NICHOLLS,
We concur:                                        *Chief Justice.*
(Signed)    L. B. W.
(Signed)    J. A. B.
(Signed)    H. C. M.
(Signed)    N. C. B.