## SIMMONS v. MILLER.

### No. 1639.

Court of Appeal of Louisiana. First Circuit.

Nov. 7, 1936.

Carlos G. Spaht, of Baton Rouge, for appellant.

C. V. St. Amant, of Donaldsonville, for appellee.

LE BLANC, Judge.

This suit has, for its principal and primary object, the re-establishment and relocation of what plaintiff contends was, and is, the correct boundary line between his property and that of the defendant which, he alleges was once marked by a fence which the defendant removed, thus attempting to destroy and obliterate the true dividing line between the two properties. Plaintiff also alleges that the defendant, by establishing his fence some 75 feet east of the said boundary line, encroached on his property to that extent, and in addition thereto removed a house therefrom, for all of which he claims damages for rent, and in the alternative for the value of the building, and finally for attorney's fees in the sum of $150 for the prosecution of this suit.

In order to support his claim that the old fence site is the true line, plaintiff relies on what he alleges was an agreement establishing it as such, which, he avers, was entered into years before, between one Sylvester Ealy, a former owner of the defendant's tract, and Joseph T. Stevens, who patented and formerly owned his tract.

The defendant, in answer to plaintiff's petition, denied practically all the allegations therein made and especially denied the existence of any boundary line between his property and that of plaintiff other than the section line between lot No. 1 of section 24 and the northern portion of section 3, township 8 south, range 3 east, in which the properties were respectively situated. Defendant then reconvened, and, alleging that his title included all land up to the section line referred to, and that the house claimed by the plaintiff stood on that portion of the property at the time he purchased it and therefore passed with the land as an immovable by destination, prayed that he be decreed the owner of his property and quieted in the possession thereof, and also

that he recover the sum of $150 as attorney's fees in order to defend this suit.

The learned district judge handed down written reasons for judgment which indicate his careful consideration of the issues involved in the lower court as well as the facts adduced from the testimony. He reached the conclusion that plaintiff had failed to establish his case by the necessary preponderance of testimony and, accordingly, he dismissed the demand as in case of nonsuit. Plaintiff appealed, and in this court has filed alternative pleas of 10, 20, and 30 years' prescription, based on the fact, as alleged in his pleading, of the existence of the old boundary fence for a period of more than 30 years, and the possession as owners of his authors in title of the land up to that boundary.

We deem it proper to take up, first, the issue as presented in the lower court, of plaintiff's right to have what he contends was the fixed boundary line between the two properties resurveyed and relocated, after which we will discuss the pleas of prescription filed in this court.

 As under our law no one is compelled to hold property in indivision with his co-owner, so also no one is obliged to leave undetermined the boundary line between his property and that of his neighbor. C.C. art. 824. This right to have the boundary line established exists not only in those cases where the two properties have never been separated, but also in those in which it appears that the line had formerly been fixed, but is no longer to be seen. C.C. art. 823. Article 832 further provides that "the fixing new boundaries, or the investigation of old ones, may be made extrajudicially and by mutual consent, if the parties are of full age." In this case, the defendant having refused to join plaintiff in his demand, the latter has resorted to this judicial investigation of what he contends is an old line, once established, with the view of having it replaced or relocated. But it is apparent, from a reading of the articles of the Code mentioned, that the party who is attempting to exercise the right which plaintiff claims thereunder must be able to show that the line he relies on had formerly been fixed, either judicially or extrajudicially, by mutual consent. Plaintiff here makes no pretense that the line he contends for had been judicially fixed, so he had to stand on the agreement which he alleges was entered into years before

between two former owners of the contiguous estates.

With these propositions now laid down, what do we find to be the facts in this case?

First, on looking into the titles by which the parties claim their respective properties, we note that plaintiff himself recites a description in his petition, copied from his deed, which he reads as follows:

"A certain tract or parcel of land, with all the buildings and improvements thereon, situated in the Parish of Ascension, State of Louisiana, and being a portion of Lot 1, Section 24, Township 8, South, Range 3 East, east of the River and St. Helena Meridian in Louisiana, and bounded on the west by lands of Jake Miller, on the north and east by the Amite River, and on the south by Petit Brusle, and containing 30 acres, more or less."

Plaintiff traces his title, to the property, through several vendors, to Joseph T. Stephens, who patented the same from the United States government on December 30, 1902. Stephens patented lots 1 and 3 of section 24. He sold the portion of lot 1 which now forms plaintiff's title to Edward Roddy on July 29, 1918, under the same description as herein copied, with the exception of the boundaries, and that description is carried in all subsequent transfers, including an adjudication to the Federal Land Bank in a foreclosure proceeding and a sale from the bank to another party.

The defendant's property is described in his deed as follows:

"A certain tract or parcel of land, together with the buildings and improvements thereon, containing approximately 23 acres, located in the ninth ward of the Parish of Ascension on what is known as the Gonzales-Port Vincent Highway, and constituting the northern portion of Section 3, Township 8 South, Range 3 East, being all of the high land in that Section; said tract being bounded on the north by the Amite River, on the south by the swamp land of said Section belonging to De Hass-Eby Lumber Co., on the east by section 24, and on the west by Section 4 of said Township and Range."

The defendant acquired from the heirs of Sylvester Ealy, who had purchased the entire section 3, containing 123.05 acres, from W. H. Merrit, on April 24, 1886, and had subsequently sold all except the 23 acres of highland, conveyed in the

plaintiff's deed, to De Hass-Eby Lumber Company. In all transactions involving these particular 23 acres the land is invariably referred to as highland and as being the northern portion of section 3.

It is to be observed from these descriptions that the property of each of the parties, according to their respective titles, is situated in a different section and that the description of plaintiff calls for the property of the defendant, Jake J. Miller, which is in section 3, as its eastern boundary and that of the defendant calls for section 24, in the northern part of which is plaintiff's property, as its western boundary. That can mean only that, according to their respective titles, the section line between sections 3 and 24 is the dividing line of the two properties. A photostatic copy of the township map is found in the record on which the line between the two sections referred to is well-defined, and we find no dispute about the government survey which established it. Inasmuch as the eastern boundary of the defendant's property, according to his title, is section 4, there can be no doubt that the width of his property is the entire width of section 3. Similarly, the plaintiff's title calling for defendant's property, which is the northern portion of section 3, as its western boundary, and the Amite river, which is the extreme eastern boundary of lot 1 of section 24, as its eastern boundary, there can be no doubt that the width of his property is the entire width of the northern portion of lot 1 of section 24. Now, the width of these respective governmental plots is bound to be fixed and determined according to the government survey, and, if the location of the section line which divides them is changed one way or the other, it stands to reason that one of the parties will have an advantage in the width of his property over the other, to which he is not entitled. This is precisely the advantage plaintiff would obtain over the defendant. Were his contentions to prevail, he would have the court fix the line some 75 or 78 feet further west into section 24 where he does not even pretend to own property according to his title. This, in our opinion, shows the first weakness in his case, as otherwise it would require strong proof to show that the boundary line had been changed by mutual consent between two former owners from where it is located by the government survey to a point probably 75 feet west of that point.

The preponderance of testimony shows that there was an old fence erected by Joseph T. Stephens on the line contended for by plaintiff as the correct boundary line, but the evidence is woefully lacking in regard to any agreement by, or consent on the part of, the adjoining owner, Sylvester Ealy, that that fence constituted the true dividing line between the two properties. Both of these parties have long since died, and, as it is not even pretended that any such agreement was ever recorded, plaintiff could only produce the oral testimony of witnesses who relied on their recollection of the old fence and their impression that it had always been recognized as the boundary line of the Stephens property. The testimony of these witnesses is far from convincing us that it had so been recognized. It is true that plaintiff had obtained an order of court to have a survey made and that Mr. L. Q. Huey, a licensed civil engineer, did run a line where the old fence supposedly stood. But his report to the court shows that in making his survey he relied altogether on information furnished him by the same parties who appeared as witnesses for the plaintiff, and besides, as his report shows that he in no way complied with the requirements of the Civil Code, his survey and testimony in connection therewith have but little value as a matter of proof.

The testimony of Huey Stephens, a son of Joseph T. Stephens, and a witness for the plaintiff, conveys a good idea of what we believe occurred at the time this fence was built. He speaks of his father having told Ealy, who was a negro, that he was going to build "on the higher ground there whether or not the fence was right." From this and other testimony in the record, we get the impression that Ealy's property was the only high land available for a homesite and that he merely permitted Stephens to occupy a portion of his property as such, and to fence it in. Certainly the record is barren of any testimony showing that he received any consideration whatever for it, and no reason is suggested why he should have made Stephens a present of it.

On the issue as presented to the lower court, therefore, we find ourselves in thorough accord with the conclusions

reached by the trial judge that plaintiff has failed to show that any of his land lies in section 24, where some of it necessarily would have to be located if the line he contends for is the correct boundary between the two properties, and that he has entirely failed to show that the old fence line relied on by him was ever recognized by Stephens and Ealy, former owners of the two adjoining tracts, as the true and fixed boundary between them. As we further agree with the learned district judge that the evidence produced by the plaintiff shows the contrary, we are inclined to the opinion that his decree which merely nonsuited plaintiff was improper and that the demand should have been dismissed by final judgment.

It now remains to be seen whether the pleas of prescription filed in this court have been properly urged by plaintiff, as a result of the sustaining of which the judgment of the lower court would have to be reversed.

■ The pleas of 10 and 20 years' prescription can be easily disposed of as both of those prescriptions depend upon adverse possession by the party claiming under them, and, as seen in our discussion of the main issue in the case, our impression of the testimony is that even plaintiff's authors in title, beginning with Joseph Stephens himself, never did hold the land up to the line claimed, under such possession. He held it merely in "occupancy," to use the term adopted by the Supreme Court in the case of Williams v. Bernstein, 51 La.Ann. 115, 123, 25 So. 411, in describing the holding of land under such circumstances. There certainly had never been any fixing of the line as the boundary under a survey either judicial or extrajudicial, and neither, as we have held, had there been any agreement that it was to constitute the true line, all of which we think was necessary in order to establish any claim to the property under prescription.

■ With regard to the plea of 30 years' prescription, plaintiff seems to rely for support on the decision in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 485. Plaintiff derives his comfort from the sanctity with which the court in that case seems to have surrounded well-established, visible, bounds which have existed for more than 30 years. "It

is our firm conviction," said the court, "that the public interest requires that boundaries established for more than 30 years should not be disturbed; and we think the law so provides." It then proceeded in that case to apply the prescription of 30 years as provided for under article 852 of the Civil Code. The facts in that case, however, were so different from those in the present that the decision cannot be regarded as authority. But, even were we to view the pronouncements of the court in the light most favorable to the plaintiff here, the decision would still avail him nothing, as under the testimony of his own witnesses the period of 30 years had not run from the time they claim the fence was erected to the filing of a suit by the present defendant in which the line became involved in controversy. Adopting the testimony of plaintiff's witnesses, it was in 1903 that the fence was erected, and it was in July, 1931, that defendant filed suit against one Moody U. Dixon, the then owner of plaintiff's tract of land, seeking to recover that portion of the property inclosed by the fence and asking to be restored to the possession thereof. That, as is noted, was a period of less than 29 years, which is more than a whole year short of the 30 years required.

■ With regard to plaintiff's alternative demand for the value of the building on that portion of the property in controversy, it strikes us that the defendant has as strong a claim to the same as has the plaintiff. As the building stood on the property at the time of the defendant's purchase of his property, and his deed called for the land "with all buildings and improvements thereon," in the absence of anything on the conveyance records to the contrary, the same passed with the property as an immovable by destination, and, in our opinion, rightfully belongs to him.

With an amendment to the decree rejecting plaintiff's demand in full instead of, as in nonsuit only, the judgment appealed from will be affirmed.

It is therefore ordered that the decree in the judgment appealed from be, and the same is hereby, amended by rejecting the demand and dismissing plaintiff's suit as in case of final judgment, instead of nonsuit, and that, as thus amended, the judgment and decree appealed from be affirmed.