GLADNEY, Judge.
Plaintiffs instituted this action to have judicially fixed the boundary-between Lot *659 One (owned by defendant-appellee) and Lot Two (owned by plaintiffs-appellants), Section 4, Township 17 North, Range 13 West, Bossier Parish, Louisiana. Lot One lies east of Lot Two, both properties being situated in a bend of Red River referred to as Wright’s Island. Upon filing of the suit the trial court commissioned surveyors E. M. Freeman and Van A. Barnett to conduct a survey of the property and make an official report, but prior to submission of their findings defendant tendered as special defenses, the prescriptions of ten, twenty and thirty years. After hearing, a plea of prescription was sustained and the suit ordered dismissed. Plaintiffs have appealed.
Evidence adduced on defendant’s exception discloses the bone of contention between the parties is a small segment of land approximately twelve acres or more which the defendant claimed was bounded on its west side by a fence that constituted the recognized boundary between the lands of the contending parties.
Certain facts are not in conflict and furnish a brief resume of the ownership and possession of the land in question. At the beginning of this century and for many years before the Woodley family owned the west end of Wright’s Island and the Van Hoose family owned the east end. During the year 1906 a negro tenant of the Wood-leys erected a fence to enclose the land he was cultivating. The erection of the fence was without direction from the Woodleys and without a survey. The Van Hoose family at the time of the erection of the fence and for some eight years afterward, did not farm nor occupy their property on Wright’s Island. In 1914 Gordon Van Hoose started managing his father’s property and installed a tenant thereon. The Woodleys have retained their ownership on Wright’s Island but the Van Hoose’s property, after having passed through successive sales, now belongs to Blanton, the appellee of this case, who acquired it in 1938. In 1942 Blanton rented by oral lease the Woodley property and promptly removed a fence sometimes herein referred to as “the occupation fence.”
Counsel for appellants, in argument and brief, assert:
“(1) The fence which appellee relied upon was not intended as a boundary.
“(2) The physical detention of the disputed property exercised by ap-pellee and those under whom he holds has been mere occupancy.
“(3) If there ever was adverse possession as owner by appellee or those under whom he holds it did not continue for thirty years.
“(4) The fence relied upon by ap-pellee did not remain in the same place during the period of its existence.”
Defendant’s pleadings do not specify which of the ten, twenty and thirty year statutory periods of limitation are relied upon. His brief and argument, however, seem to indicate he now solely stands upon prescriptions of ten and thirty years and we infer from sources de hors the record the trial judge sustained the prescription of thirty years, predicated on LSA-C.C. Art. 852. After the record was lodged in this court the appellee specially pleaded the acquisitive prescription- of ten years under Article 3478 of the LSA-Civil Code. It is our understanding the prescription pleas and related issues presented on the appeal embrace only those limitations prescribed by LSA-C.C. Arts. 852, 853 and 3478.
For a better comprehension of the issues we refer to certain legal principles well established in our jurisprudence and appropriate articles of the Civil Code. The pertinent Codal articles are:
“Art. 825. The action of boundary, like that of partition, can not be prescribed against; as every one is at liberty, at all times, to separate his part from an estate in common, so it is permitted to each proprietor to have ascertained the limits of contiguous estates, *660 to have them fixed, as each has enjoyed his estate separately without having acquired any part of his neighbor’s estate by prescription.”
“Art. 852. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.”
“Art. 853. If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.”
“Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party.”
“Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
“Art. 3490. The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
“Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess for him.”
The Supreme Court having under consideration a plea of prescription based on LSA-C.C. Art. 3499, made the following comments with reference to boundaries and enclosures, in Hill v. Richey, 1952, 221 La. 402, 59 So.2d 434, 440:
“ * * * But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a strict interpretation should be given to the word ‘enclosures’.
"We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word ‘boundaries’ as used in Article 3437 of the Civil Code dealing with possession. That article provides: ‘It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it *661 be with the intention of possessing all that is included within the boundaries.’ In that case this court said that ‘ * * The word “boundaries”, in that article, means the limits or marks of inclosure if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * *»
“Further, Article 826, provides:
“ 'By boundary is understood, in general every separation, natural or artificial, which marks the confines or line of division of two contiguous estates. Trees or hedges may be planted, ditches may be dug, wells or inclosures may be erected, to serve as boundaries.
“ ‘But we most usually understand by boundaries, stones or pieces of wood inserted in the earth on the confines of two estates.’
“What the court means by ‘enclosures’, as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means ‘enclosed only by a fence or wall’ would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have herein-above pointed out, and would lead to absurd consequences in some cases.”
Also of special significance is a pronouncement in Sessum v. Hemperley, 1957, 233 La. 444, 96 So.2d 832, 843, wherein the Supreme Court held that Article 852 of the LSA-Civil Code and applicable jurisprudence do not exact as a condition precedent the mutual consent of the adjacent owners, saying:
“Clearly, the now well-established rule, as a result of our codal provisions and the cited authorities, is that where there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds. The lack or failure of consent on the part of the adjacent owner cannot affect the rights that accrue by operation of law to the possessor under the thirty-year prescriptive plea. We feel that the foregoing conditions have been completely met in the instant case.”
Reference to the provisions of LSA-C.C. Arts. 853, 3478 and 3479 shows defendant’s pleas of ten year limitations (LSA-C.C. Arts. 853 and 3478) are not sound. The record fails to disclose any surveyor’s error requiring rectification and hence Article 853 is without application to the facts at hand. Likewise, if predicated on LSA-C.C. Art. 3478, the defendant is required to disclose a legal title sufficient to transfer the property sought to be acquired, but there has not been pointed out to us in defendant’s chain of title words of conveyance “sufficient to transfer the property” herein sought to be acquired by prescription, and this, of course, is fatal to the plea based on Art. 3478. The de *662 fendant acquired title to Lot Two in 1938, the description of the property so conveyed providing the following:
“Lot No. Two (2) Quarter Section Four (4), Township 17 North, Range 13 West, Caddo Parish, Louisiana, less right of way of the Texas and Pacific R. R. Company, with all buildings and improvements thereon; This sale is declared by the Vendor herein to include all of Wright’s Island in said Quarter Section Four (4), except the excepted right of way referred to and except also that portion of the West end of Wright’s Island presently owned and possessed by Mrs. Kate Woodley and Miss Minnie Woodley, and regardless of whether said lands sold is in Lot No. Two (2) only, or is in Lots One (1) and Two (2), Quarter Section Four (4).”
By reason of the exceptions there is no indicated division line between the contending parties other than the north-south line dividing Lots One and Two. Our conclusion, therefore, is that defendant has not acquired a prescriptive title under LSA-C.C. Art. 853 or Art. 3478.
As we understand the import of Sessum v. Hemperley, supra, certain jurisprudence theretofore existing has been modified so that now in order to support a plea of acquisitive prescription under Article 852 of the LSA-C.C., the lack or failure of consent on the part of the adjacent owner does not affect rights that accrue by operation of law to the possessor. Accordingly, appellants’ first contention that the fence which appellee relied upon was not intended as the boundary, is immaterial and acquiescence by appellants is sufficient.
The fence in question appears to have been erected in 1906 by a tenant of the Woodleys. Mrs. Woodley refused to spend any money on a fence which the tenant desired in order to enclose land he was cultivating, and without advice other than his own, he proceeded to fence in his land to prevent destruction of his crops by cattle. The fence was of the kind alluded to in Williams v. Bernstein, 1899, 51 La.Ann. 115, 124, 25 So. 411, 415, wherein the court stated :
“The mere fact that parties owning adjoining property have cultivated lands up to a certain line, or up to a certain fence * * * does not per se evidence an adverse possession up to the line or fence, or an acquiescence in or recognition of an adverse ownership. Neighbors constantly run up fences within or beyond the boundary lines, and join their fences; doing so with the knowledge and understanding that such acts are merely temporary, and done subsidiarily to, and with reference to, the right of both to ultimately ascertain and fix rights by an action of boundary, or through a formal, legal survey. Until this happens, the lands held by each are in the occupancy, and not in the adverse possession, of either, — certainly so in the absence of a clear and direct claim advanced of adverse ownership and possession. In the absence of such a claim, the other party is justified in assuming that matters as to boundary are resting in abeyance, subject to future adjustment through an action of boundary.”
The record fails to substantiate actual occupancy or possession on Wright’s Island prior to 1914 by the predecessors in title of the defendant. In that year Gordon Van Hoose began looking after the property in which he had an interest. He testified he rarely visited the property and knew but little, if anything, about the property lines. He and many of the twenty-five or more witnesses called on behalf of the defendant, testified that to their knowledge a fence had existed but its present location was not fixed by them to any proper degree of certainty.
Those holding under Blanton and his predecessors in title after 1919 used some *663 of the property involved herein up to a fence west of the railroad right of way. It is apparent Blanton knew nothing of the origin or purpose of the fence, hut upon acquiring his property he assumed the fence constituted a boundary line between his property and the Woodleys. It seems clear to us that any use of the disputed land prior to 1919 constituted occupancy and possession of the type described in LSA-C.C. Art. 3490. Both Gordon Van Hoose and Blanton testified neither had ever had any intention of claiming beyond their title. However, upon further direct examination Blanton said he intended to claim all to which he was legally entitled.
Of special importance, so it appears to us, is the question of “a visible boundary, artificial or otherwise”. In 1942 Blanton removed the fence forasmuch as he had the entire use of the property by virtue of ownership and lease from the Woodleys. Later he moved to Texas and only occasionally returned to Shreveport. One of the remaining visible bounds upon which appellee relies is a pipe filled with cement located on the north side of the Woodley property. Arthur Williams testified he set this marker in concrete under the direction of Mr. Eicher, a civil engineer. It was set, according to witnesses at the junction of a fence between the Woodley and Van Hoose properties. Other so-called visible markers were two sycamore trees with strands of imbedded barbed wire, a post hole, and two posts near or on the south line of the Woodley property. Testimony was adduced to establish a ridge of land connecting the “visible markers” as indicating the former existence of a fence row. It was shown the ridge was made by Blanton a few years prior to trial. Blanton admitted also that the hole above referred to was left upon his removal in 1940 of a gate he had erected along the fence. Henry L. Bango, qualified as a professional forester and testified the strands of wire found in the sycamore trees could not have been placed there more than twenty-five years ago. The two posts found on the south line of the Woodley property were not shown to our satisfaction to have been in place any definite number of years, or that they were in any wise connected by a fence with the north line of the property. It thus appears that vestiges or visible remains of defendant’s fence line are predicated solely on the iron pipe located on the north end of the property, and some testimony that in recent years the remains of an old fence projected a short distance from the iron pipe in a southeasterly direction. The distance from the pipe to the south line of the Woodley property was about 1,300 feet.
Testimony concerning further evidence of visible bounds upon which we should place greater reliance, is that of George E. Dutton, Van E. Barnett and Rhett Parker, all of whom were involved in making a survey of the ideal boundary between the Woodley and Blanton properties. One of Dutton’s maps reproduces a fence supposedly as shown on a plat of a survey by Charles D. Evans, Civil Engineer, dated May 24, 1924. We confess we cannot follow Mr. Dutton’s reproduction. Neither Barnett nor Parker, who acted for Freeman, would vouchsafe for such a fence as Blanton claimed existed.
We find the defendant has failed to establish: first, a visible boundary which had been in existence for thirty years or more; and second, that he and his predecessors have, in addition to the land described in the title, actually possessed continuously for thirty years or more any land embraced in the Woodley title. These findings require the pleas of prescription urged by the appellee to be and they are hereby overruled.
The judgment sustaining the plea of prescription herein is reversed, annulled and set aside, and this case is remanded for further proceedings according to law, not inconsistent herewith. Costs of this appeal are assessed against defendant-appel-lee, all further costs to await the determination of the suit.