293 So.2d 888 (1974)
Ruby Lee CARPENTER et al.
v.
M. E. COBB et al.
No. 9799.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
*889 Robert E. Tillery and Stanford O. Bardwell, Jr., Baton Rouge, for appellants.
Ronald L. Causey, Baton Rouge, for M. E. Cobb.
Donald C. Theriot, Baton Rouge, for Turnley and Devall.
Before SARTAIN, BAILES and VERON, JJ.
VERON, Judge.
Plaintiffs in this suit have appealed from an adverse judgment decreeing that they failed to establish the requisites for thirty-year prescription of a strip of land belonging to defendants. The trial court found that plaintiffs had failed to proved the necessary adverse possession of the property in question. Specifically, it was held that plaintiffs did not show a clear intent to possess the land as owners, and that, assuming the intent had been shown, their possession was continually interrupted "since the true owner continued to use the property in an uninhibited manner".
The trial judge has written a well-reasoned opinion covering the above issues and we adopt that portion of his opinion here as a portion of our opinion:
"This litigation arises fundamentally from a boundary dispute between landowners of contiguous estates located in the Parish of East Baton Rouge. The issue is the ownership of a disputed strip of land running in a westerly direction from the Sullivan Road between plaintiffs' and defendant's lands. The Carpenter (the children being the heirs of W. R. Davis) property is situated on the north side of the disputed strip, whereas the defendant's land is located on the southside. Both parties to the suit trace their title to a common ancestor, W. H. Vaughn. At his death, the property was divided between two of his heirs at the same boundary now in controversy. It appears that about 1920 a fence was constructed between these parcels by W. C. Bourke, defendant's ancestor in title. Near the midway point of this fence, there was a gapa passagethrough the fence which served as a gate for access to Bourke's property. Later, around 1937, another fence was constructed by W. R. Davis (Mrs. Ruby Lee Carpenter's first husband) for a short distance from Sullivan Road and several feet north of the first fence. Why the second fence was built has not been determined by the evidence, but in any event, it does not seem to have any significance toward the resolution of the dispute. Between these two fences, a lane or path developed, and was commonly used by the Davises, their tenants, and the Bourkes.
"In 1967, Cobb purchased his property and shortly thereafter, during the spring of 1968, he removed a part of the original fence located in the front portion of the property and which extended back to the gap previonsly described. While the removal of the fence itself did not prompt hard feelings between the respective landowners, the meanderings of cattle belonging to Mrs. Carpenter and her son, Bobbie Lee Davis, onto Cobb's lands stimulated antagonism between the parties, finally culminating in this suit brought by Mrs. Carpenter and her children seeking to have the boundary line between the respective properties established.
*890 "Initially, the plaintiffs were under the impression that the Bourke fence marked the correct boundary line according to their title. Cobb, on the other hand, contended that the fence did not divide the properties and rested entirely within the property belonging to his estate. However, concurrent with the filing of their petition, the plaintiffs requested that the Court appoint a surveyor to make a survey of the property, and particularly to establish the boundary line between the property. Accordingly, the Court appointed James Joffrion, a Civil Engineer to prepare the survey. His survey showed that according to the titles of the parties the fence line was not the proper boundary between the parties and that the land in dispute belonged to the defendant Cobb. (See Exhibit D-J) The petitioners, while admitting the correctness of the survey, now contend that they have acquired the subject strip by prescription and the fence is the true boundary between the properties.
"There are three ways in which one may acquire a prescriptive title to property. The first is provided by Civil Code Article 3478:
`He who acquires an immovable in good faith and by just title prescribes for it in ten years.' [..."]
"It is obvious however, that the petitioners cannot meet the requirements necessary to avail themselves of this article or means of prescription because they did not have just title to the strip of land in dispute. In this context, Civil Code Article 3483 provides:
`To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title.'
"It is clear, therefore, that one cannot, by the prescription of ten years, acquire property not embraced within the title upon which the plea of prescription is founded. Carlisle v. Graves, 64 So.2d 456 (La.App. 2nd Cir. 1953). As the Joffrion survey indicates, plaintiffs' title did not describe the disputed property.
"The second possible means of acquisition is provided by Civil Code Article 3499 dealing with thirty year prescription:
`The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.'
"Civil Code Article 3493 permits `tacking' of one possessive period of a prior author in title by a subsequent possessor in order to aggregate thirty years. However, the transferees acquisition by prescription is limited to the transferred land in the title, and not all the land actually possessed. Stutson v. McGee, 13 So.2d 403 (1961). [241 La. 646, 130 So.2d 403 (1961)] In the present case, therefore, the plaintiffs may not `tack' the possession of their predecessors in title to their own possession to acquire by thirty years prescription under Article 3499 because as mentioned above, the disputed land was not described in their title. (Exhibit P-B)
"Nevertheless, the petitioners have asserted an additional ground for acquisition by alleging that a long standing physical boundary existed between the properties. This contention is supported by authority found in Civil Code Article 852 under the chapter on the fixing of boundaries. This article does not contemplate acquisition of the land of another per se by thirty years possession. It simply seeks to perserve the integrity of well defined visible boundaries established for more than thirty years. In comprehensively reviewing the law dealing with the establishment of boundary lines, the Supreme Court, in the landmark case of Sessum v. Hemperley, 96 So.2d 832 [233 La. 444, 96 So.2d 832 (1957)] stated:
`It is fundamental that resort to an action in boundary has for its objective the physical separation of one estate from another and to thereby mark the limits of each by visible bounds. LSA-C.C. Art. 826. The *891 object sought to be attained may be accomplished either judicially or extra judicially. LSA-C.C. Art. 832.
`An action in boundary may be resorted to when any one of the following three situations exists: (1) where a boundary line has never been established to separate the contiguous estates; (2) where although once established or the estates separated, the physical bounds have been completely eradicated; and (3) where there has been an incorrect fixing of the boundaries. LSA-C.C. Arts. 823, 853.
`In the first instance, where the boundary lines have never been established or the estates separated, it is well settled that under LSA-C.C. Art. 845 the boundaries must be fixed according to the respective titles of the parties, and in the absence of titles on both sides, possession governs. In the second instance, where the boundaries have once been fixed and have become eradicated, such boundaries must be replaced as they formerly stood. Zeringue v. Harang's Administrator, 17 La. 349; Opdenwyer v. Brown, 155 La. 617, 99 So. 482. In the third instance, where boundaries have been incorrectly fixed, the cause of action is to rectify or correct boundaries established in error. Williams v. Bernstein, 51 La.Ann. 115, 124-125, 25 So. 411. It is well settled that in the first and second instances the action is imprescriptible, the theory being that every land owner is entitled to have his land separated from adjoining lands, its limits ascertained and fixed. LSA-C.C. Art. 825.
`In the third instance, where there exists actual visible bounds which have been extra judicially placed incorrectly or fixed by the consent of or the active acquiescence of the adjacent land owners, an action in either case to rectify an alleged error in the location of the boundary line must be instituted within ten years under the penalty of being prescribed. LSA-C.C. Art. 853. The consent as to visible bounds made essential under said article to form the basis of ten year prescription must be more than a passive acceptance; it must be an affirmative recognition by both parties. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891.
`The mere erection of a fence or a hedge as a boundary, without the consent of the adjoining land owner, will not serve as the basis for ten year prescription, for this is said to be mere occupancy, and not adverse possession as required by LSA-C.C. Art. 853. Williams v. Bernstein, supra. Further, when boundary lines are fixed judicially, the fixing thereof becomes a part of and is merged in the judgment which, saving attacks on the ground of fraud made within one year, becomes res judicata.
`LSA-C.C. Art. 852 says: "Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession."
`Under the provisions of LSA-C.C. Art. 852 it is observed that one who has maintained uninterrupted possession of property within existing visible bounds during thirty years may retain the quantity so possessed by him though it be beyond and more than called for by his title. This is the possession that is essential to bring this article into operation, irrespective of the good or bad faith on the part of the possessor. There is nothing in the provisions of LSA-C.C. Art. 852 which demands the element of mutual consent of the parties. Its provisions clearly provide that possession of surplus land beyond one's title shall entitle him to retain the same once his possession *892 has continued uninterrupted within visible bounds for a period of thirty years. Beene v. Pardue, La.App. 1955, 79 So.2d 356; Sattler v. Pellichino, La.App.1954, 71 So.2d 689; Adams v. Etheredge, La.App. 1954, 70 So.2d 388; Duplantis v. Locascio, La.App.1953, 67 So.2d 125; Tate v. Cutrer, La.App.1951, 53 So.2d 285; Picou v. Curole, La.App.1950, 44 So.2d 354; Latiolais v. Robert, La.App.1942, 8 So.2d 347.'
"Conventionally, the plea of prescription under Article 852 has been used by a defendant to respond to a suit seeking boundaries established according to a survey; however, there has been at least one recent case where the plea of a plaintiff was recognized[1] and the Court knows no valid reason why it cannot be invoked by a plaintiff land owner seeking to establish a proper boundary between his property and that of a continuous land owner.
"Simply stated, Article 852 requires: 1) a visible boundary, artificial or natural, and 2) actual uninterrupted possession, either in person or through ancestors in title for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds. In order to `tack' under this article, it is not necessary that the transferor be an author in title, it only being necessary that the transferor is a predecessor in possession. See, Opdenwyer v. Brown, 155 La. 617, 99 So. 483 [482] (1924). Therefore, the plaintiffs in this case may tack to the possession of their predecessors to all of the land within the boundaries. Since it is not disputed that the fence was and has been in existence for more than thirty years, the only question which remains is whether the plaintiffs and their predecessors actually possessed the property up to the boundary for thirty years. This is the question upon which there is serious dispute and upon which a decision in the matter rests.
"Several Civil Code articles articulate what is understood by the term `possession' in the sense of that possession required for thirty years.
"Civil Code Article 3426 states:
`Possession [Possession] is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name.'
"Civil Code Article 3427 provides:
`There are two species of possession, natural and civil.'
"Civil Code Article 3428 declares:
`Natural possession [Natural possession] is that which a man detains a thing corporeally, as by occupying a house, cultivating ground, or retaining a movable in possession.'
(Emphasis provided by the Court)
"Civil Code Article 3430 states:
`Natural possession is also defined to be the corporeal detention of a thing which we possess as belonging to us without any title to that possession, or with a title which is void.'
"Civil Code Article 3436 provides:
`To be able to acquire possession of property, two distinct things are requisite:
1) The intention of possession as owner.
2) The corporeal possession of the thing.'
"As to be expected in a case of this type, the evidence is conflicting as to the use and possession of the land immediately north of the fence. W. C. Bourke, who constructed the fence and is Cobb's ancestor in title, testified that the lane was in existence when he acquired the property and that he placed the fence within his own property line because he did not want anyone tying into his fence. He further said that he utilized the lane frequently in gaining access to the rear of his property. *893 On the other hand, Eugene Vaughn (plaintiffs' ancestor in possession testified that he occupied the property from 1920 to 1925 and that during this time he considered that he owned all of this property and cultivated a field in the rear portion up to the fence. Mrs. Carpenter testified that her first husband, W. R. Davis, erected a small cottage adjoining the fence line toward the rear and the tenant of this cottage farmed this land up to the fence line. Quentin Bourke, W. C. Bourke's son, stated that he had used the lane himself to move machinery to the rear of the property as late as 1967 and that no one else had ever claimed ownership of that strip of land. Several other witnesses testified to the effect that the Vaughns and thereafter the Davises occupied all of the property to the fence line, whereas other witnesses testified as to the use of the lane by the Bourkes and their tenants. The ultimate factual conclusion to be reached from this testimony is that the plaintiffs and their predecessors in title occupied the property behind the fence line for farming purposes and that the defendant and his predecessors in title utilized the lane and that strip of land immediately north of the fence for passage to and from other parts of their property.
"If possession as contemplated by Article 852 is to be gauged by superior use and occupancy, then the plaintiffs have met the test and should prevail. However, according to the previous definitions afforded by the Civil Code and the jurisprudence, the character of possession demanded of the person claiming under thirty year prescription is that it be so open and notorious as to put the owner on notice of a claim adverse to his own. Journet v. Gerard, 173 So.2d 263 [(La.App. 3rd Cir. 1965)]. This possession, therefore, must be undisturbed by any uses of the property made by the title owner. Such is not the case herein where the evidence clearly shows that the defendant's predecessors made frequent and consistent [use] of the disputed strip.
"The burden of proof rests on the one claiming adverse possession. Humble v. Dewey, 215 So.2d 378 (La.App. 3rd Cir. [1968]). It appears to the Court that since the true owner continued to use the property in an uninhibited manner, the plaintiff has failed to show that his possession was complete and accordingly, adverse to the defendant. Consequently, the Court holds that the adverse possession required of the petitioners has not been proven and the boundary line, as determined from the survey must prevail.
"Therefore, for the reasons expressed herein, this Court decrees that the boundary line determined by the survey of James R. Joffrion, C. E., (Exhibit D-J) is hereby fixed as the correct boundary line between the respective parties belonging to the petitioners and the defendant."
The only remaining matter concerns the assessment of the costs of the survey. The trial court assessed one-half of the survey costs to each party. Plaintiffs complain that all of the survey costs should be assessed against the defendant. The trial court found that in this case, "not only before suit was filed but in settlement conferences held by the court to resolve the matter, the defendant refused to take any steps toward the amicable disposition of the matter."
In the case of Edmonston v. Badeaux, 242 So.2d 58, (La.App. 1st Cir. 1970), writs refused, 257 La. 611, 243 So.2d 275 (1971), we stated:
"... It has been consistently held by the Court of this State that the costs of a Court ordered survey should be assessed against the party who has refused to amicably settle a boundary dispute. Lirette v. Duplantis, La.App., 65 So.2d 639 ..."
In view of the finding of the trial court and law as cited above, we find that the defendant should pay all costs of the survey.
For the reasons hereinabove assigned, the judgment of the Lower Court will be *894 amended so as to charge all costs of the survey against the defendant, and as so amended, the judgment of the Lower Court will be affirmed. Costs of this appeal are to be paid by plaintiffs.
Judgment amended and affirmed.
NOTES
[1] Johnson v. Horton, 262 So.2d 158 ([La.App.] 2nd Cir. 1972).