This is a boundary suit in which the plaintiff asks that the boundary of his land which joins that of the defendant on the south be fixed so as to give him his full 25 arpents of land. The principal defense is that a boundary fence was constructed by the former owners of the two tracts of land more than thirty years ago, and that this fence has been recognized as the boundary by the owners since the fence was erected; that the defendant and his author in title have been in the open, public and undisputed possession of the land up to said fence for more than thirty years, and if the fence was not the correct boundary, the defendant has acquired the property up to said fence by the prescription of thirty years.
In the year 1909, Jules LeBleu owned 100 arpents of land, more or less, described by boundaries. He sold or donated this land to four of his children, giving each an equal part of 25 arpents. The tract now owned by the defendant was conveyed by said Jules LeBleu to defendant's mother on April 15, 1909, and was described as 25 arpents of land and being the southeast quarter of the 100 arpent tract. On the same day, Jules LeBleu transferred to Laure LeBleu 25 arpents of land, being the northeast quarter of the 100 arpent tract. These are the two tracts involved in this suit, the defendant having acquired the southeast 25 arpents from his mother by *Page 613 
deed in 1940, in which deed the tract is said to be bounded on the north by the plaintiff, Lavergne. Lavergne acquired the northeast 25 arpents in 1940 from Eluce Sonnier by deed, in which deed the southern boundary is given as the land now owned by the defendant, so it is clear that the land of the plaintiff is bound on the south by that of the defendant and the land of defendant is bound on the north by the land of plaintiff. It is also conceded that the tracts are two of the original four tracts sold by Jules LeBleu to his four children in 1909 at the time he divided the 100 arpent tract into four equal parts.
At the request of plaintiff, the court appointed a surveyor to survey the property and make a report thereon. The surveyor made a survey and filed a proces verbal and map in which he first shows the 100 arpent tract, and then divided this tract (which actually contains an area of 99.40 arpents) into four equal parts, thereby giving to plaintiff and to defendant each 24.85 arpents. However, shortly after the 100 arpent tract was divided by Jules LeBleu among his four children, a fence was built by the then owners to divide the northeast quarter and the southeast quarter, which fence runs 37.2 feet north of the dividing line fixed by the surveyor on the east and 51.2 feet north of the surveyor's dividing line on the west, thus showing an encroachment of defendant's land over plaintiff's of this strip on the north of defendant's tract, and which strip contains 95 of an arpent, the land actually in dispute in the case.
If there was no line established by the former owners so as to serve as the basis of prescription for the overlapping strip now claimed by defendant, and if the boundary was to be fixed according to the titles, it is clear that the line fixed by the surveyor would be the correct boundary, as each tract was a quarter of the original 100 arpent tract. However, we think, as did the trial judge, that the evidence is overwhelmingly to the effect that a fence was built as a dividing line between the two tracts in 1909, or shortly thereafter, and that there are still evidences of this old fence. The fence became dilapidated some four years ago, and the wire was removed, but some of the old posts are still visible. A few months before this suit was filed, the defendant and his father built a new fence on the line which fence is located about eighteen inches south of the old fence row.
It is not necessary to go into the details of the evidence which shows that a line fence was built between these two tracts of land, and has been recognized as the boundary for more than thirty years. The owners of the tract on the south cultivated up to this fence, and there was a drainage ditch dug just north of this old fence to carry the water from the west toward the east, and this old ditch is still there. In fact, the plaintiff himself rented from a former owner and cultivated this same tract which he now owns only a few years before he bought it, and he admits that he never cultivated south of this ditch. The decided preponderance of the evidence is to the effect that there was an old post of the old fence at both the cast and the west corners, as well as other visible signs of the old fence at the time defendant and his father built the new fence 18 inches south of this old fence. This fence ran across the entire 100 arpent tract, thus dividing the north half from the south half, as well as dividing it into quarters. The surveyor shows this old fence row on his map and testified that visible signs of it still remain.
The point is made by counsel for plaintiff that the defendant did not place the new fence on what he contends is the old fence line either because this old fence line was not visible or never existed. However, the defendant and his father both testified that they put the new fence back a foot and a half from the old fence so as to be sure the fence would not be on plaintiff's land, as the latter objected to the new fence, and would not consider it as a dividing fence. The defendant also stated that he had been advised by his attorney to build the new fence a little back of the old fence line so there could be no question about the fence belonging to him.
The facts in this case are very similar to those in the cases of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, and Lincoln et al. v. Fomby, 16 So.2d 745, cited by the trial judge, and the trial judge was correct in maintaining the plea of prescription filed by the defendant and fixing the boundary as the old fence line.
For the reasons assigned, the judgment appealed from is hereby affirmed at plaintiff's cost. *Page 614