ELLIS, Judge.
Plaintiff has filed this suit for the purpose of having judicially established and determined the boundary between his property and that of the defendant. The defendant first plead the prescription of ten and thirty years which was overruled, and a trial on the merits resulted in a judgment in favor of the plaintiff approving the line established by J. A. Lovell, surveyor, who had been commissioned by the Court. The original judgment was rendered on the 30th day of November, 1942, and the defendant, on December 16, 1942, was granted a devolutive appeal to this Court returnable on the 15th day of January, 1943. The case was continued on joint motion of counsel on April 7, 1943, and again on November 10, 1943 and on April 5, 1944 this court again continued the case on motion of counsel for appellant and appellee, and further ordered “This being the third continuance of this case it is ordered that same be placed on the ‘dead docket’ by the Court, and to remain pending further orders by the Court.”
The case, on motion of counsel for appellant, was recently recalled from the dead docket and argued.
Counsel for defendant-appellant contends, first, that the survey was incorrectly made in that the surveyor considered all of the titles rather than just the titles *449 of the plaintiff and defendant. On this point appellant argues in his brief:
“ * * * As stated by the surveyor in his proces verbal, the tracts owned by the plaintiff and defendant originally composed part of a tract having a front on Bayou Lafourche of five arpents, more or less, with a depth between parallel lines of forty arpents. This tract composes all of Sections 69, 33 and 68 of Township 17, Range 19 East and was owned at one time by Rosalie Foret, widow of Louis Bourgeois, who on September 6, 1888 subdivided it into eight tracts of varying frontage on Bayou Lafourche. The four lower subdivisions were acquired by J. N. Bourgeois, Jr. by several mesne conveyances emanating from Rosalie Foret. On April 27, 1920 J. N. Bourgeois, Jr. conveyed these four tracts to Raphael Galiano. (See Abstract, Page 41) In the conveyance to Galiano a consolidated description is also used giving the whole tract a frontage on Bayou Lafourche of two arpents and thirty seven feet, or some eight feet, ten and one quarter inches (8', 10(4") less than the original frontage.
“The defendant’s tract is derived from a tract of land sold by Rosalie Foret, widow of Louis Bourgeois, on September 6, 1888, the same day as that of the sales of the four lower subdivisions. This tract, originally calling for a frontage of One hundred forty one feet, seven inches (14F, 7"), was sold to Mrs. Adrien Barbier, and on June 9, 1911 it was donated by Mrs. Barbier and her husband to Paul Bar-bier. (Abstract, Page 37.) Clerville Barbier acquired this subdivision from Paul Barbier by Act of Sale dated August 14, 1920. (Abstract, Page 42) It will be observed that in the sale by Clerville Barbier the frontage of the defendant’s tract is for the first time expanded to three quarters of an arpent. Thereafter, on July 16, 1927 Clerville Barbier sold this tract to the defendant. (Abstract, Page 43.)
“The tract acquired by Raphael Galiano was conveyed to the widow of J. N. Bourgeois on July 25, 1928 and later sold by the heirs of Mrs. Bourgeois to the plaintiff on March 29, 1938. (Abstract, pages 47 and 49) In these latter transfers the plaintiff’s tract retains its frontage description of two arpents and thirty seven feet.
“In the location of the boundary line, the court appointed surveyor established a line 429 feet, 10(4 inches above and parallel with the lower or southern line of Section 33.”
******
“Furthermore, we think that intention of the Widow Rosalie Foret to sell by measurements is manifested by the minute attention to frontage given in her deeds. Numbering the subdivisions sold by Rosalie Foret from 1 to 8, beginning with the uppermost tract, these measurements are stated as follows:
Tract No. 1 107', 1(4”
Tract No. 2 98', 8"
Tract No. 3 182', 5"
Tract ¡No. 4 141', 7"
Tract No. 5 89', 6"
Tract No. 6 101', 6(4"
Tract No. 7 86', 5"
Tract No. 8 152', 5"
“Whether the sales by the Widow Rosalie Foret were intended as per aversionem sales, however, may be considered a subordinate point inasmuch as the surveyor was called upon to fix the limits of the LeBlanc and Barrios tracts according to their respective title. Without conceding that the subdivisions of Rosalie Foret were per aversionem sales, the principal reason why the survey should have been rejected by the trial court was *450 that the surveyor failed to locate the line according to the description called for in Rene LeBlanc’s deed of acquisition.
“As noted previously in this brief, the frontage of the four lower subdivisions was diminished by eight feet, ten and one quarter inches (8', 10J4") in the sale by J. N. Bourgeois, Jr. to Raphael Galiano on April 27, 1920. What the vendor’s intention was in diminishing the size of the tract transferred to Raphael Galiano is left to conjecture. It is, of course, possible that was done to allow for some encroachment from the adjoining proprietor above. Some substance is added to this theory by the concomitant expansion of the Barrios tract four months later in the sale by Paul Bar-bier to Clerville Barbier on August 14, 1920, in which act the frontage is increased to three fourths of an arpent. If our contention is correct and the Galiano sale is construed as a sale by measurement rather than a sale per aversionem the upper line of the Le-Blanc tract would fall several feet south of the Lovell line.
“Since the upper line of the Barrios tract is not at issue here we do not feel called upon to account for the location of that line as result of the expanded frontage called for in the 1920 deed; we think it sufficient to say that the most reasonable assumption is that the expansion occurred at the lower boundary of the Barrios tract where there was a contemporaneous diminution of the LeBlanc tract. And, since LeBlanc’s ancestor in title, J. N. Bourgeois, designated new limits to the tract, ‘the limits anciently subsisting between the * * * estates, must not be regarded * * * ’ R.C.C. 844.”
“ ‘And if such a division fence had been erected previous to the time Cam-bre became the purchaser and proprietor of the two tracts, the union of both in his person, and the sales made by him giving different boundaries, would destroy any right in subsequent purchasers to claim under ancient limits. This very case is put in the Roman Digest, Liv. 10, tit. 1, law 12. And the framers of our code have adopted the principle, and it now makes a part of the positive regulations of the state. Louisiana Code, 840. (R.C.C. 844) Bourguignon v. Boudousquie, 6 Mart. N.S., 697.’
“In summary, it is our position that the sale to Rene J. LeBlanc was not a sale per aversionem between fixed boundaries, but was a sale by measurement, it being the intention of Le-Blanc’s vendor to convey to him a trapezoid or parallelogram shaped tract of land having a distance of two arpents, thirty seven feet between the east and west parallel lines. Accordingly, we submit that the surveyor erred in constructing all of the sales in the chain of title of LeBlanc and Barrios as sales per aversionem.”
We agree with counsel for appellant when he states that “whether the sales by the Widow Rosalie Foret were intended as per aversionem sales however, may be considered as a subordinate point inasmuch as the surveyor was called upon to fix the limits of the two contiguous tracts according to their respective titles.” In the record is a complete abstract which the surveyor correctly considered in arriving at the true boundary according to the titles of plaintiff and defendant. Had he attempted to fix the boundary merely by examining only the title whereby the plaintiff and defendant had acquired the contiguous property, it is clear that the properties would not have been contiguous for as stated by counsel in the above quoted portion of his brief, when the defendant acquired tract No. 4, supra, it was described as “measuring three quarters (%) of an arpent front on said bayou by forty (40) *451 arpents in depth * * * This tract was originally sold as measuring 141' 7" front on the bayou, and if we accept 192' for an arpent, defendant, when he acquired this property on July 16, 1927 from Cler-ville Barbier, would have received 2' 5" more than the original tract had in it, and if we accept the descriptions literally, as counsel for plaintiff would have us do, in the act from Joseph M. Bourgeois and wife to Raphael Galiano, one of the ancestors in title of the plaintiff, we find tract No. 1 as described therein, which was the same as Tract No. 8 supra, we find instead of 152' 5" front on the Bayou the description which states: “measuring three-fourths arpent front on Bayou Lafourche.” We also find in tract No. 3 in said deed the front measuring “eighty-six and one-half feet front on Bayou Lafourche * * * ”, whereas it was intended as tract No. 7 supra, which contained 86' 5", and in tract No. 4 set forth in said deed we find the front “measuring one hundred one feet” whereas it is intended as Tract No. 6, supra, which was 101' 6)4”.
Thus we find a variance in three of the four tracts from the original totalling 8' 10" which would leave the two tracts separated by at least 6' 5". However, the deed from Bourgeois and wife to Galiano, supra, as to Tract No. 1 refers to vendor’s acquisition from Narcillian Delaune in C.O.B. No. 41, page 122. This deed is in the record as a part of the complete abstract, and we find this tract described therein as “measuring more or less three-fourths of an arpent front * * * All of the deeds referred to give the additional description of being bounded above and below by certain owners which further identifies the tract in question and clarifies the description so as to make it definite. This same tract is described in the deed from Felicien Barrios to Marcillien De-laune in C.B. 27, pg. 261 as “ * * * measuring, more or less, 148 feet front by a depth of 40 arpents; * * * When Raphael Galiano sold to Widow Jos. N. Bourgeois on July 25, 1928 as recorded in COB 61, page 220, instead of designating the tract one, two, three or four, as was done when he acquired the property, he described the property partially as “measuring two arpents and thirty seven feet front on said Bayou * * * ” and when the plaintiff acquired from the vendee of Galiano the property was described as “measuring two (2) arpents and thirty seven (37) feet front on said Bayou more or less by forty arpents in depth * * * ” (Emphasis added.)
From an examination of the transfers as shown in the abstract without the necessity of detailing each and every one, there can be no doubt but that the plaintiff’s ancestors in title intended and did transfer the exact property as subdivided and described by Rosalie Foret, on September 6, 1888. The frontage on the Bayou of the four lower subdivisions according to the deeds in the abstract in the record was correctly fixed at 429' 1014" by the surveyor appointed by the Court. It is also clearly established by the abstract of title of the defendant that he was entitled to 141' 7", however, it was loosely described as three fourths of an arpent front on said Bayou when he acquired the property. However, we find that when Paul Barbier, vendor of Clerville Barbier, acquired the property it was described as measuring “one hundred thirty six (136) feet front on the said bayou Lafourche, by forty arpents in depth,” whereas Paul Barbier’s vendor, who was Adrien Barbier and wife, acquired from Mrs. Rosalie Foret, the original subdivider, “one hundred and forty one feet seven inches front on said Bayou, by a depth of forty arpents.” As previously stated, all of these deeds give the names of the owners above and below, particularly the property in question. The learned Judge of the Lower Court was eminently correct in approving the survey as made by C. E. Lovell, pursuant to the order of the court.
There still remains the question of ten and thirty years prescription plead by the defendant and overruled by the judge of *452 the Lower Court. The facts show that there was a coulee, which we understand to be in the nature of a natural drain, at or near the boundary between plaintiff’s and defendant’s property on the front closest to the bayou and road, which, as might be expected, did not drain into Bayou Lafourche but carried defendant’s water to the rear and away from the bayou. This canal is referred to by all the witnesses as a canal or ditch. The latter term is more appropriate as it averaged from one to three feet in width, and it appears that this coulee, canal or ditch was kept open by plowing. It is described by all the witnesses as being crooked and that when the plow would come to a stump it would go around the stump, and it is also shown that this ditch near the road in front of plaintiff’s and defendant’s property was practically on the correct boundary line, but that as it ran to the rear of the properties it bore over on the defendant’s property. It is further shown that during the time Paul Barbier owned the property, some twenty odd years, prior to this suit, he “straightened” this so-called canal or ditch and after this straightening process the surveyor found it to vary from one foot south of the proper boundary line on the front near the road between the plaintiff’s and defendant’s property near the road running along Bayou Lafourche to 28 feet on the plaintiff’s property where it stopped at the edge of the swampland shown by the surveyor to be 4600 feet.
The witnesses testified that the defendant and his ancestors in title cultivated his property up to this coulee, canal or ditch and that the plaintiff and his ancestors in title cultivated his piece of property to the south up to this coulee, canal or ditch, and most of them thought that this was the boundary line between the two properties. It is also shown that after the canal was straightened out by Paul Bar-bier and came further over on the property now belonging to the plaintiff, no protest was made but the same custom of cultivating up to this straightened ditch was continued. There is no testimony that there was ever any agreement or mutual understanding or consent that this coulee, canal or ditch was ever to constitute and be accepted as the true boundary between the property of plaintiff and defendant or their ancestors in title. As a matter of fact, the record shows that when Jos. Bourgeois owned the property several years before the survey provoked by the plaintiff in this suit, he disputed the ditch as the boundary line and caused a survey to be made which Barrios refused to accept. In addition, this coulee was crooked and was plowed out in a manner so as to void the stumps by defendant’s ancestors in title in order to drain their land and it was used as a drainage system exclusively by the prior owners of the property now belonging to defendant, as well as the latter. The plaintiff’s property never drained into this particular coulee, ditch or canal. There is no question or dispute but that the division line between the two properties is described as a straight line as distinguished from the crooked ditch that was plowed from time to time in order to facilitate drainage. It would be illogical to assume that any one would have agreed to such a division line, and there is no testimony in the record that it was ever done. In addition, we have the ditch being changed, straightened out, coming further over on the property now owned by the plaintiff, but not one line of testimony that this straightened ditch was to be considered the true boundary between the properties, or that the property owners agreed or consented to the ditch being changed.
Also left in the air would be the answer to the question of where the proper boundary line should be placed when the end of this so-called canal or ditch was reached. Would the boundary line continue in the general direction of the ditch, which would take most of plaintiff’s property, before it intersected the rear line, or when the end of the ditch was reached would it be proper to run 28 feet in a northerly direction and strike the correct boundary line *453 and then on to the rear of the property? The agreement contended for by the defendant to the effect that the ditch was to be the boundary line between the two properties should reflect an answer to these questions. There is no evidence upon which to sustain the ten years prescription plea. The line was never fixed or mutually agreed upon as contemplated by the law.
The testimony of plaintiff Rene LeBlanc indicates that Paul Barbier straightened the canal in about the year 1912, and from that time up to filing of suit in 1939 (27 years later), the new canal remained in the same location. During that period, the owners of upper tract cultivated up to the canal but not over it, and likewise the owners of the lower tract did the same, thus in effect both recognizing the canal as the boundary line between the two estates. Had such visible boundary persisted for 30 years, instead of 27, it is probable that the prescriptive period of Article 852 would have been applicable, precluding our accepting the ideal rather than the actual visible bounds. Opdendwyer v. Brown, 155 La. 617, 99 So. 482, DeBakey v. Prater, La.App. 1 Cir., 147 So. 734. But adverse possession was not shown for the requisite length of time, and it is admitted that the present canal is “below” or on the LeBlanc side of the old canal. And, as was pointed out in our decision in Picou v. Curole, La.App. 1 Cir., 44 So.2d 354, which sustained a plea of 30 years’ prescription under Article 852, but rejected the plea of 10 years’ prescription only under Article 853, for this latter plea, mere occupancy by cultivation or otherwise up to a line fixed by one neighbor without the proven consent of the other, does not constitute consent or acquiescence so as to maintain the pleaded prescription of ten years, Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, Blanchard v. Monrose, 12 La.App 503, 125 So. 891.
 On the plea of thirty years prescription defendant cites the case of Lavergne v. Sonnier, La.App., 20 So.2d 612, 613, and argues that the Court found that the plaintiff, prior to acquisition, had rented the same property for cultivation and during the years had never cultivated south of the drainage ditch which followed a fence claimed by the defendant under the plea of thirty years prescription as the correct boundary. He further states that the court considered this conduct as a recognition on the part of the plaintiff that the fence served as a boundary line between the properties. The facts in the cited case are entirely different from those in the case under consideration. In the cited case this court with Judge Ott as its organ, found “that the evidence is overwhelmingly to the effect that a fence was built as a dividing line between the two tracts in 1909, or shortly thereafter, and that there are still evidences of this old fence. * * * ” * * * “It is not necessary to go into the details of the evidence which shows that a line fence was built between these two tracts of land, and has been recognized as the boundary for more than thirty years.” The same cannot be said of the facts in this case for this ditch or canal was never dug originally as a dividing line between the plaintiff’s and defendant’s properties, nor is there any testimony that it was recognized as the true boundary between the properties, and no evidence that it was mutually agreed upon as the true boundary between the two properties.
For the reasons assigned the Judgment of the District Court is affirmed.